## No. 105.

HENRY BODENHEIMER ET AL. VS. EXECUTORS OF LAZARUS BODENHEIMER.

Stale claims, long withheld from prosecution or presentation, are regarded with disfavor.

Extra-judicial admissions of a dead man are the weakest of all evidence, since they cannot be contradicted, and no fear of detection in false swearing impends over the witness.

The evidence of a claim that has long been delayed in its prosecution, when no hindrance was in the way, must be more conclusive than in ordinary circumstances. It must be established with more than reasonable certainty.

A PPEAL from the First District Court, Parish of Caddo. *Taylor*, J.

| | |
|---|---|
| 35 | 1005 |
| 50 | 1226 |
| 35 | 1005 |
| 105 | 711 |
| 35 | 1005 |
| 112 | 998 |
| 112 | 1007 |
| 35 | 1005 |
| 118 | 428 |
| 35 | 1005 |
| 122 | 829 |
| 35 | 1005 |
| 125 | 661 |

*T. F. Bell* and *J. S. Young* for Plaintiffs and Appellants.

*Alexander & Blanchard* and *Land & Land* for Defendants and Appellees.

The opinion of the Court was delivered by

MANNING, J. The plaintiffs, children of Jacob Bodenheimer, who died in 1864, sue for the value of one hundred and two bales of cotton, alleged to be $13,770, which their mother and tutrix " delivered to Lazarus Bodenheimer in the summer of 1865 with the agreement and promise on his part that he would take it and pay the value of it." Prescription is pleaded, and the general issue.

The suit was filed in September, 1882. The inventory of Jacob Bodenheimer's estate taken July 15, 1864, has no mention of cotton, but the omission of that article of property at that particular juncture from the inventory is not prejudicial to the claim. It was a time when eager eyes were searching for it, and wary owners cautiously concealed the places of its concealment. The sum total of the inventory was $765.76 in Confederate currency.

Lazarus Bodenheimer was a nephew of Jacob, and was in the quartermaster or commissary departments of the Confederate Army, and was stationed at Shreveport during the last two years of the war. The house in which Jacob and his family lived at Bellevue belonged to Lazarus. The theory of the defendants is that Lazarus availed himself of his opportunities to buy cotton, stored it at Bellevue or his premises under the eye of his uncle, where it was preserved, and at the close of the war had it hauled to Shreveport where he sold it. The facts proved are that it was thus stored, and was hauled to Shreveport by the direction of Lazarus in July, 1865, and that he sold it as his own, and no one gainsayed his exclusive ownership of it.

About that time the widow and her children came also to Shreveport, and lived there where Lazarus likewise lived, in active prosperous business until his death in December, 1881. During these sixteen and a half years no claim was preferred against Lazarus by the widow, or any child when it attained majority, or anyone for them, on account of this cotton. Apparently they had nothing. Lazarus died with a fortune of one hundred and sixty thousand dollars. The oldest child married, lived fourteen years thereafter, died, and made no sign of reclamation against her kinsman. Nor is she represented in this suit. The oldest of three plaintiffs is a man of thirty years, the youngest has attained majority. Seventeen years elapsed between the close of the war and the sale of the cotton, and the filing of this suit.

All these circumstances are suspicious. The claim has the appear-

ance of being vamped for the occasion. It has been withheld from the light until he, who alone could have told the true story of it, has gone down into the dark valley, from whose shadow no voice can come in contradiction. Stale claims are regarded with disfavor. Davenport vs. Labauve, 5 Ann. 141 ; Simpson vs. Powell, 7 Ann. 555 ; Suc. Rice, 14 Ann. 317, not in syllabus ; 2 Story's Equity, § 1520.

Besides the unexplained delay of the widow, who must have needed money, and of the children who became majors before Lazarus died, the testimony of the widow is unsatisfactory in the last degree, and often self-contradictory. The other witness is the man whom Lazarus hired to haul the cotton to Shreveport in 1865, and who affects to remember his conversations at that time. He details the pretended statements and admissions of Lazarus of the ownership of the cotton by Jacob's family.

Extra-judicial admissions of a dead man are the weakest of all evidence. They cannot be contradicted. No fear of detection in false swearing impends over the witness. In most instances such testimony is scarcely worthy of consideration. Suc. Fox, 2 Rob. 299 : Wilder vs. Franklin, 10 Ann. 279 ; Bringier vs. Gordon, 14 Ann. 274. In the present case it does not command our confidence in its truth. The lower Judge disregarded it, and so shall we.

Plaintiffs must establish their claims with reasonable certainty under any circumstances. A stale claim, pertinaciously and long withheld from presentation or prosecution until he, against whom it is to be preferred, has died must be established with more than reasonable certainty. An unfavorable presumption is created by the delay. It can be removed only by peculiarly strong and exceptionally conclusive testimony. The testimony here is of the weakest and most inconclusive kind.

Judgment affirmed.