On Rehearing.
LAND, J.
We have carefully reviewed the evidence in this case, and have deduced therefrom the following statement of facts:
Plaintiff claims to be the owner of a certain share of Cotton Exchange stock standing in the name of Robert W. Simpson, deceased.
Plaintiff testified under commission, when transiently in the city of New York, that about the year 1878 the firm of Kelly & Co. of Glasgow, Scotland, at the solicitation of Samuel Simpson, in Ms own behalf and that of his brother, Robert W. Simpson, placed £10,000 (or $50,000) in his hands, not strictly as a business transaction, but in response to an appeal for assistance made by Samuel Simpson, the understanding being that so much of this amount as should be necessary should be used in the purchase of two shares of stock of the New Orleans Cotton Exchange in the names of Samuel and Robert Simpson, which were to be and remain the property of Kelly & Co.; that in 1888 the share standing in the name of Samuel Simpson was transferred, by direction of Kelly & Co., to A. Dixon 1-Iannay; that the remaining share was permitted to remain in the name of Robert W. Simpson who desired to continue in the cotton business; and that Robert W. Simpson, at all times during his life when there was any occasion to speak of the subject, admitted and fully conceded the ownership of Kelly & Co.
Plow far is the testimony of plaintiff corroborated by other evidence adduced on the trial of this case?
The letters and statements filed in evidence show beyond dispute that at some date prior to October, 1882, the sum of $50,000, or its equivalent in English pounds, had been received by Simpson Bros., nominally from “Robert Carmichael,” but really from Kelly & Co.
On the trial balance of Simpson Bros, of date of October 31, 1882, appeared among their assets one share of cotton exchange stock valued at $3,300. This was 'the share purchased by Samuel Simpson in 1876.
On the trial balance of date January 21, 1883, appeared cotton exchange stock valued at $6,200.
In their letter of date June 24, 1884, to Carmichael, Simpson Bros, wrote: “Cotton Exchange stock $6200.00. This represents costs of two shares N. O. Cotton Exchange *1003 Stock necessary for membership of Messrs. Samuel and 'Robert Simpson. Stock still on hand.”
In the trial balance of April, 1885, and in the statement of 1886, the same stock appeared with a valuation of $3,000.
On the face of these statements this stock appeared as an asset of Simpson Bros., and Carmichael appears as a creditor for $50,000, on which up to August 3, 1883, the sum of $2,863.42 interest was due, and this amount was credited to Kelly & Co.
The two last statements show that the indebtedness to Carmichael had been reduced to $28,417.30, and that Kelly & Co. had become creditors in a sum of about $17,000.
In May, 1885, Samuel Simpson wrote to Hannay explaining the condition of affairs. We make the following extracts from this letter:
“Your a/c resulted £1400 more than was expected. * * * Apart from the season’s transactions we are due Kelly & Co. roundly £3000.' I would sleep more easily if I saw my way of paying off the heavy balance I am due you.”
In October, 1886, Simpson Bros., in liquidation, wrote to Kelly & Co., sending a list of their “assets,” including the two shares of cotton exchange stock.
It may be here stated that in several of the trial balances Kelly & Co. appear as debtors of the firm of Simpson Bros., the indebtedness growing out of current business transactions. And, while it seems to be conceded that Carmichael was the alter ego of Hannay or Kelly & Co., there is no explanation of why this roundabout method of transacting business was resorted to, and why two distinct accounts were kept.
Up to the year 1888 the books and correspondence show that the stock in question was considered as an asset of Simpson Bros.
But in September, 1888, Kelly & Co. wrote to Simpson Bros., in liquidation, a letter from which we make the following extracts:
“Mr. A. D. Hannay of Liverpool is going out to your city to establish himself in business for the present season, and we shall be obliged by your letting him have the benefit of one of the cotton exchange shares presently held by you. The other can remain in name of your Mr. Samuel or Robert Simpson, whichever is most convenient to you. We regret you do not keep us better posted regarding the assets you hold of ours. We fully expected you would give our interests your very first care.”
On October 24, 1888, the share standing in the name of Samuel Simpson was transferred to A. Dixon Hannay, in compliance with the request contained in the above-mentioned letter.
In November, 1889, Kelly & Co. wrote to Robert Simpson, of Simpson Bros., in liquidation, as follows:
“We have not heard from you for some considerable time regarding the various debts due to your firm. On the other side we give you a memo, of'these extracted from your letter of 13th Oct. 1886, and shall be glad to hear from you which position these debts now stand in.
“Kindly say what prospects there is of turning these into cash. We are most anxious to get these old matters brought to a point.”
Simpson Bros, replied to this letter on December 23, 1889, and gave an account of what had been done towards the collection of the items on the memorandum of October 13, 1886. The letter contained the following remarks relative to the two shares of stock:
“Cotton Exchange Stock is worth about $200. One share has been transferred to Mr. A. Dixon Hannay by your instructions. The other remains subject to your orders. * * * Do you want to sell the Exchange stock at best price?”
*1005 On March 5, 1890, according to plaintiff’s testimony, Kelly & Co. wrote to Simpson Bros., and the letter contained the following extract:
“Regarding the Cotton Exchange Stock we do not consider it advisable he sell the same just now at present low prices.”
Here the correspondence terminated. Robert Simpson died in 1896. This suit was filed in November, 1901, more than 10 years after the correspondence ceased. During the pendency of the suit in the court below, the share of stock in controversy was found in the bank box of Robert Simpson. The certificate is dated December 19, 1882, and recites that “R. W. Simpson is entitled to one share in the capital stock of the New Orleans Cotton Exchange of New Orleans, on which two hundred dollars have been paid. Transferable only on the books of the association by the holder or his attorney on surrender of this certificate.”
Of course, on the face of the papers, the certificate belongs to the succession of R. W. Simpson. The burden of proof is on plaintiff to show that this stock was purchased with the money of Kelly & Co., and for their use and benefit, as alleged in the petition.
Plaintiff alleges that in the year 18— Kelly & Co. delivered and placed in the hands of Simpson Bros., a commercial partnership composed of Samuel Simpson and Robert W. Simpson, $50,000, a part of which was to be invested in two shares of cotton exchange stock in the names of the two Simpsons, said stock to be the property of Kelly & Co.
The year is not stated in the petition, and plaintiff states in his testimony that it was about the year 1878. Hence we have a business transaction involving $50,000, between parties living in Glasgow, Scotland, and parties residing in New Orleans, La., without any evidence of date except the statement that it was about the year 1878. No written evidence of this transaction is produced, except the trial balances and letters heretofore referred to, which come from the possession of plaintiff. It may be inferred that he had no other written evidence, or, if he had, that it was not favorable to his contention. In the nature of things, there must have been correspondence and other writings evidencing the date of the transaction, the amount advanced, and the terms and conditions of the agreement between the parties.
As it is, plaintiff relies on his own testimony and the statements and letters which he produced. No letters or writings prior to 1882 were introduced in evidence. In that year we find a trial balance of Simpson Bros, in which they acknowledge that they owed Carmichael $50,000.
Penrose, the bookkeeper, testified that the partnership commenced business in September, 1882, and went into liquidation in September, 1885.
It is true that the witness said “I think,” but he is confirmed by the fact that nothing shows the existence of the firm prior to 1882.
As Samuel Simpson purchased in 1876 one, of the shares of stock claimed by the plaintiff as the property of Kelly & Co., and as the other was purchased in 1882, the necessity of plaintiff’s ease forces the argument that “about 1878” means 1876, or in 1882, or any other year in which the stock may have been purchased.
■ If the money was furnished in 1876 for the special purpose of purchasing two shares of stock, why was not the second share purchased until 1882, six years later?
There is no evidence, beyond the vague and unsupported testimony of plaintiff, that the money was advanced or loaned prior to September, 1882. The trial balances show that the whole $50,000 was credited and remained credited to Carmichael, and interest paid thereon, long after the last share was acquired.
If the price of the shares was paid out of the $50,000, how happens it that Simpson *1007 Bros, still owed the full amount to Carmichael?
Moreover, said shares appear on all the statements as’forming a part of the assets of Simpson Bros.
The statements of plaintiff in his second deposition, to the effect that Simpson Bros, invested the whole sum of $50,000 for Kelly & Co., is not sustained by any substantial evidence.
In the trial balances Kelly & Co. appear both as debtors and creditors dealing with Simpson Bros. All of the assets figure thereon as the property of Simpson Bros. The relations between the two firms were those of debtor and creditor, and not of agent and principal. The assumption that Simpson Bros, were trustees of Kelly & Co. rests on the unsupported assertion of plaintiff, whose testimony, per se, is not sufficient to prove an obligation exceeding $500 in amount, and, as against a dead man, is the weakest of all species of evidence. Civ. Code, art. 2277; Bodenheimer v. Bodenheimer’s Ex’rs, 35 La. Ann. 1005; Wood v. Egan, 39 La. Ann. 684, 2 South. 191.
The failure of the plaintiff to produce, or account for the absence of, written evidence of a transaction involving $50,000, between parties residing on different continents, creates a presumption that the contemporaneous writings, if produced, would be prejudicial to his case. Ice Co. v. Ermann, 36 La. Ann. 841.
We erred, and the district judge erred, in holding that the testimony of plaintiff was sufficient to prove an agency or trust for the investment of $50,000, or even of $6,200, the value of the shares in 1882.
The facts shown by the writings, taken as a whole, tend to the inevitable conclusion that the relations between the parties were those of creditor and debtor, and not of agency or trust.
The letter of Robert Simpson to the effect that the share of stock was held subject to the order of Kelly & Co., and inquiring whether they desired it sold, did not operate a transfer of property.
Plaintiff does not so contend, but argues that the letter is corroborative evidence that the share belonged to Kelly & Co. This does not follow.
The share was purchased by Robert Simpson in 1882, and was never by him transferred to any one. He wrote that he held the share subject to the order of Kelly & Co., but they gave no order, and surely a statement by an honest debtor in insolvent circumstances that he holds certain property subject to the order of his creditor does not, per se, evidence a transfer of title.
In our opinion, the plaintiff has failed to make out his case with reasonable certainty, and it is therefore ordered, adjudged, and decreed that our former judgment rendered herein be vacated and set aside, and the judgment appealed from be annulled, avoided, and reversed, and it is now ordered that plaintiff’s suit be dismissed, and that he pay costs in both courts.
See dissenting opinion of BREAUX, C. J., 36 South. 834.