LAND, J.
Andrew Murphy, by opposition filed to the final account of the testamentary executrices of Widow Frigerio, deceased, claimed to be a creditor of the succession in the sum of $1,185, of which $1,100 was evidenced by a lost note signed by the decedent and dated about March 3, 1905, and $85 was for work done during the same year.
Opponent alleged that about April 15, 1899, the decedent made a verbal contract with him to fill a certain square (including the ponds and ditches therein belonging to her in the city of New Orleans, for the lump price of $1,000, which verbal contract was confirmed by a letter from the decedent dated April 15, 1899, filed as a part of the opposition ; that the decedent subsequently made a verbal contract with the opponent for sundry work of carpentering and painting the residence in said square for the price of $100; that for the work of filling said square, and the work on said residence, decedent did, by letter of date March 3, 1905, filed as a part of the opposition, promise to pay the opponent the sum of $1,100, and did furnish and give to him a note for this amount, signed by decedent, which said note the opponent is unable to produce, having lost the same, and having used due diligence to find or recover said note by search and public advertisement; that said note was dated within a few days of the date of said letter of March 8, 1905; that the decedent was indebted unto opponent, pursuant to verbal contracts, in the further sum of $60 for rebuilding the fence around said square of ground, and in the further sum of $25 for painting a storeroom at her residence, corner of Claiborne and Bayou road.
The answer of the executrices, commencing with a general denial of all the allegations contained in the opposition of Andrew Murphy, specially denied the several contracts therein set forth, also the genuineness of the two letters annexed to the petition of opponent, and that the decedent ever gave to said Murphy a note for the sum of $1,100 or any other sum, and averred that if any such note, purporting to have been given by her, was ever made, it was a forgery. The answer further represents that the opponent was the tenant of the square of ground and residence thereon at the low rental of $12 per month; that the filling done on the premises was for the benefit of the tenant and at his own expense, including the replacing of the fences; that the repairs to the residence were at the expense of the tenant, the decedent to furnish the materials; and that the painting of the storehouse was done under a verbal contract for the price of $4, which was paid.
The case was tried, and there was judgment rejecting the opposition with costs. Andrew Murphy, the opponent, has appealed.
The issues before us are purely of fact, and the burden of proof is on the opponent. The question to be solved, on the voluminous record before us, is whether the appellant has made out his case by a clear preponderance of the evidence.
In the year 1899 xlndrew Murphy leased by the month from the Widow Frigerio a square of ground, with a small residence thereon, situated in the rear of the city of New Orleans. The rental price was $12 per month. Opponent alleges that about April 15, 1S99, Mrs. Frigerio made a verbal contract with him to fill said square, and all the ponds and ditches therein, for the lump price of $1,000, and that this contract was *827 ■confirmed by a letter dated April 15, 1899. This letter was proved by direct and circumstantial evidence adduced in the court below to be a clumsy 'forgery..
Opponent alleges that by letter of date .March 3, 1905, Mrs. Erigerio acknowledged that she owed him $1,100 for filling the square and. other work, and promised to .bring him a note in a few days. The evidence shows that this letter was also a for,gery of the crudest kind.
. Opponent testified that he received both ..these letters by mail, but he did not swear .that either is in the handwriting of Mrs. Erigerio. According to his testimony, the .opponent kept the letters but destroyed the envelopes.
Opponent alleges that on or about March 3, 1905, Mrs. Frigerio gave him a note for .$1,100, which was subsequently lost. The opponent and his brother testified that about .said date Mrs. Erigerio visited the leased premises, and saying, “I have brought you the note,” presented to him a sheet of paper ■on which was written:
“I recognize to owe to Mr. Andrew Murphy the amount of eleven hundred dollars for work done for tne.”
Mrs. Erigerio died in March, 1906. Opponent testified that he lost the note shortly after the death of Mrs. Frigerio. The loss was not advertised until a year later.
The opponent paid $12 per month rent until April, 1905, and thereafter $15 per month. After the death of Mrs. Frigerio, opponent at one time paid $90 in advance for six months’ rent, and continued to pay rent until the premises were sold at public auction
Mrs. Erigerio died at the age of 68, leaving an estate exceeding $100,000 in value. She was well educated, and was a good business woman. Her husband was a dealer in optical instruments. When he died, many years ago, his widow took charge of the business and conducted it successfully. A daughter and a son assisted her, and were familiar with all her business affairs. Both testified that they were present when the alleged contract for filling the square was made, and that the only agreement or understanding on the subject was that the lessee would be permitted to fill with mud excavated from the Claiborne street canal, at his own expense, for his own purposes, and Mrs. Erigerio was to obtain a permit to use the dirt. Such a permit was obtained on April 14, 1899. The opponent desired to cultivate the square, and the excavated soil was useful as a fertilizer as well as a filling for low places. The square had already been ditched for drainage purposes. According to opponent’s testimony, he commenced the work of filling in 1899, and completed it in March, 1905. He was a carpenter and painter by trade, and could devote only his spare time to the work of filling. His version is that the work was. to be done to suit his convenience, and the owner waited patiently for six years for the contractor to complete the job. According to the opponent’s testimony, Mrs. Erigerio not only made such a foolish contract, but also agreed to sell him the place for $3,000 when all the work done by him for her should amount to $2,000, the balance of $1,000 to bear 15 per cent, per annum interest. This very extraordinary and improbable agreement was not evidenced by any written instrument or memorandum. The letter of April 15, 1899, was forged for the purpose of evidencing the alleged original agreement of Mrs. Erigerio to pay $1,000 for filling the square. The letter of March 3, 1905, was forged for the purpose of evidencing that Mrs. Frigerio owed the opponent $1,100 and had promised to give him a note for the said amount. These letters read as follows:
“New Orleans April 15, 1899.
“Mr. Andrew Murphy: I have gotten the Permission to haul the ground from the Claiborne hill you can Start the work has you have Proimmis me the contract is to fill up all Pounds and ditches and all over the square and the *829 banquett you have Proimmis me to do the work first class for the amount of one thousand dollars. Oath. Frigerio.”
“New Orleans March S, 1905.
“Mr. Andrew Murphy: I have ordered the lumber for the fence Please be very careful to Put it on the Severe line on Roberson St. PL be at your house in a few days to see if the work is well done at the same time I’l bring the note that I have Proimmissed you X have made the account of eleven hundred dollars that have owe you until now you have proimmised me if I would give you a lease for seven years that you was willing to Pay $15.00 your lease starts in April 1905. Cath. Frigerio.”
The lumber referred to was purchased on July 14, 1904, as shown by the bill rendered at the time.
By whom these crude forgeries were perpetrated is not shown by the evidence. They were, however, produced by the opponent, and his case rests on them as confirming verbal contracts made with a dead woman. Discarding these documents, the preponderance of the evidence, and the probabilities of the case, are against the theory that any such contract was made. Even against a living person, the testimony of a single credible witness is per se insufficient to show a verbal contract involving more than $500 in value. Rev. Civ. Code, art. 2277. Moreover, it has been repeatedly held by this court that the extrajudicial admissions of a dead person are the weakest of all evidence, and in most instances such testimony is scarcely worthy of consideration. Bodenheimer v. Bodenheimer, 35 La. Ann. 1007. The opponent was contradicted on a number of material points by the son and daughters of Mrs. Frigerio. His story is highly improbable in itself, and abounds in inconsistencies and contradictions. His credit is necessarily affected by the fact that he relies on forged documents, which must have been manufactured in his interest. The existence of the alleged lost note as the work of Mrs. Fri-gerio rests on the testimony of opponent, and his brother. The latter never read the alleged note, but testified that Mrs. Frigerio about March, 1905, came into his brother’s kitchen and said:
“Well, Mr. Murphy, I have brought you what you asked me for, and I suppose you will be satisfied.”
Then she opened a paper and read it:
“I recognize that X owe to Mr. Murphy the sum of eleven hundred dollars for work done for me.”
His brother said:
“X am much obliged to you, and I will call the man in the yard to sign it.”
Then Mrs. Frigerio said:
“Isn’t this satisfactory to you?”
And so his brother took the note and said no more. The memory of this witness was-' phonographic in accuracy and retentiveness.
The district judge, in rejecting the demand of the opponent, necessarily refused to give credit to the story just related. In addition to the evidence, both direct and circumstantial, tending to show that Mrs. Fri-gerio never made the alleged contracts , on which the alleged note was supposed to be based, there is direct and positive evidence that Mrs. Frigerio in March, 1905, was in feeble health and physically unable, without assistance, to visit the leased premises, some eight squares distant from the nearest street car line.
We have read with care the voluminous evidence adduced on the trial below, and are not prepared to say that the trial judge erred in his conclusions. The three minor items claimed by opponent rest on his unsupported testimony. As to the item of $25 for painting, it is shown that opponent agreed to do the job for $4, which was paid. As for the fence item of $60, it is shown that deceased agreed to furnish the lumber and the opponent to do the work. As to the item of $100 for painting and carpenter work, it is shown that a part is for repairs which the opponent, as tenant, agreed to make, and the balance was for work on the *831 house of a third person. No claim was made on any of the items Sued for while Mrs. ETigerio was living, The pretended agreement to sell the premises is the only excuse offered for the failure of the opponent to demand payment or a settlement during the lifetime of Mrs. Frigerio.
Judgment affirmed.