(55 South. 695.)

No. 18,412.

CALDWELL v. TURNER.

(June 15, 1911. Rehearing Denied June 30, 1911.)

*(Syllabus by the Court.)*

1. EVIDENCE (§ 589*)—WEIGHT AND SUFFICIENCY — TESTIMONY OF PARTY — CLAIM AGAINST DECEDENT.

The testimony of a plaintiff in his own favor to establish a large claim against a succession should be received with the greatest caution. It is, in itself, of the weakest character, and, unless strongly corroborated, cannot serve as a basis for a judgment of recovery. Under article 2282, Revised Civil Code, the circumstance of his being a party may diminish the extent of his credibility. Cutler v. Succession of Collins, 37 La. Ann. 95; Bodenheimer v. Bodenheimer, 35 La. Ann. 1005; Revised Civil Code, 2277; Succession of Townsend, 40 La. Ann. 66, 3 South. 488; Calhoun v. McKnight, 44 La. Ann. 578, 10 South. 783; Succession of Gabisso, 122 La. 829, 48 South. 277; Succession of Daste, 125 La. 657, 51 South. 677.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2438; Dec. Dig. § 589.*]

2. MASTER AND SERVANT (§ 3*) — CONTRACT FOR SERVICES — SUFFICIENCY — CERTAINTY— COMPENSATION.

To let out labor or industry is a contract by which one of the parties binds himself to do something for the other, in consideration of a certain price agreed on by them both. Civil Code, art. 2675. Where the price is not fixed or certain, between the parties, there is no contract. Civil Code, art. 2672; University v. Piffet, 34 La. Ann. 603; Haughery v. Lee, 17 La. Ann. 22; Jordan v. Mead, 19 La. Ann. 101; Maestri v. Board, 110 La. 521, 34 South. 658.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 2–4; Dec. Dig. § 3.*]

3. MASTER AND SERVANT (§ 2*) — CONTRACT FOR SERVICES—VALIDITY—TERM.

In a lease for services there must be a term (Civil Code, art. 2746), which cannot exceed five years (Civil Code, art. 167).

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 2.*]

4. WILLS (§ 58*) — CONTRACTS TO GIVE LEGACY.

A mere expression on the part of a deceased person of her intention to provide for a friend in her will does not form the basis of a contract; and it is not a will. Civil Code, 1814; Watson v. Barber, 105 La. 804, 30 South. 127.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 164, 165; Dec. Dig. § 58.*]

5. ACTION (§ 52*)—JOINDER—CIVIL LAW.

It is competent for a party to sue on a contract, and, at the same time, to sue on a quantum meruit for services not embraced within the terms of the contract. Succession of McNamara, 48 La. Ann. 45, 18 South. 908.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 548; Dec. Dig. § 52.*]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles A. O'Niell, Judge.

Action by Virginia Caldwell against Emeline M. Turner. Judgment for plaintiff for insufficient relief, and she appeals. Affirmed.

Foster, Milling, Brian & Saal, for appellant. Borah & Himel, for appellee.

SOMMERVILLE, J. Plaintiff declares upon an oral contract entered into in 1888 with

Mrs. Amanda Delmas, of St. Mary parish, La., now deceased. She sues Miss Turner, the residuary or universal legatee of Mrs. Delmas, for $10,200, for value of services rendered Mrs. Delmas under that contract between September 27, 1888, and August 5, 1909, the date of the death of Mrs. Delmas.

The only evidence of this large and important contract is the testimony of plaintiff. The other alleged party to the contract is dead, and there is no testimony of any kind in the record to the effect that the deceased admitted the existence of such a contract, beyond the testimony of plaintiff.

In the syllabus of Cutler v. Succession of Collins, 37 La. Ann. 95, we said:

"The testimony of a plaintiff in his own favor to establish a large claim against a succession should be received with the greatest caution. It is, in itself, of the weakest character, and, unless strongly corroborated, cannot serve as a basis for a judgment of recovery. Under article 2282, Revised Civil Code, the circumstance of his being a party may diminish the extent of his credibility."

And in Bodenheimer v. Bodenheimer, 35 La. Ann. 1005:

"It has been repeatedly held by this court that the extrajudicial admissions of a dead person are the weakest of all evidence, and in most instances such testimony is scarcely worthy of consideration." Succession of Townsend, 40 La. Ann. 66, 3 South. 488; Calhoun v. McKnight et al., 44 La. Ann. 578, 10 South. 783; Succession of Gabisso, 122 La. 829, 48 South. 277; Succession of Daste, 125 La. 657, 51 South. 677, 29 L. R. A. (N. S.) 297.

Plaintiff testifies, with reference to the terms and conditions of the alleged contract, as follows:

Mrs. Delmas "asked me to go and live with her, and I told her that I would come for a visit, which I did, and she insisted on my coming to live with her. Q. You came to pay a visit? A. Yes, sir; I told her I would come and see how I liked it. Q. And you went there on the 27th of September, 1888? A. Yes, sir; on the 27th of September, 1888. Q. What declaration did Mrs. Delmas make to you with reference to compensating you for the services rendered her? A. She always said, all the time, whenever I spoke of going away, that she did not want me to go, that she wanted me to live with her always, and often told me 'I will remember you and provide for you in my will.' Q. Why did she make you that declaration? A. Because she wanted me to stay with her if possible. She was very fond of me, and always said that she would provide for me in her will."

It is quite clear from this testimony that Mrs. Delmas did not agree to compensate plaintiff if she would go to live with her at the time the latter went there first. It was only after "services" had been "rendered" by plaintiff to Mrs. Delmas and the former "spoke of going away" that Mrs. Delmas said:

"I will remember you and provide for you in my will."

There does not therefore appear to have been a contract entered into between plaintiff and the deceased; and we think that the trial judge was correct when he found that there was no contract entered into by them. Plaintiff appeals from that judgment.

The record shows that plaintiff subsequently testified that the idea of compensation never entered her head when she first accepted Mrs. Delmas' invitation to visit her "until she (Mrs. Delmas) suggested it," "the first week I was there." "She said that she wanted me to come and live with her, and that she would provide for me in her will; that she would see that I was provided for when she was gone." And when asked, "Not for any services you were to render?" plaintiff answered, "She just wanted me to be with her, to be her companion, and look to her comfort."

This arrangement was most indefinite. Mrs. Delmas did not stipulate that plaintiff was to live with her until the former's death, and plaintiff did not expect to, "for," she says, "whenever I spoke of going away, she did not want me to go."

Plaintiff argues that the contract sued upon resembles a contract for hire of services, of which article 2675 of the Code says:

"To let out labor or industry is a contract by which one of the parties binds himself to

do something for the other, in consideration of a certain price agreed on by them both."

She then proceeds to argue that:

"The parties to the present contract agreed that a legacy, the interest of which should be sufficient to maintain Miss Caldwell for the remainder of her life should be the compensation for certain services to be rendered. This was the price agreed upon by both."

This, in its nature, is not "a certain price," if it can be considered a price at all. It was not stated what would be "sufficient to maintain Miss Caldwell." Mrs. Delmas might have had one opinion, and Miss Caldwell a very different one as to what would be sufficient to maintain the latter. Besides, Miss Caldwell did not testify to any such agreement. She said:

"I [Miss Caldwell] told her [Mrs. Delmas] if she wanted to provide for me, to leave me enough so that I could live on the interest, and that after my death I was willing for it to go to Miss Turner. That was a long time ago. I said that I would obligate myself to leave it to Miss Turner. I said that five or six years ago."

But she did not say that Mrs. Delmas agreed to that proposition, and she is not suing on that contract of 5 or 6 years ago; but on one of 20 years ago. Miss Caldwell, at another time, testified that Mrs. Delmas said in "the last few years of her life that she wanted me to have enough that the interest would pay my board anywhere. Q. Did she ever name any sum? A. She did not name any sum. She said that the interest on five thousand dollars would pay my board and allow me what little incidentals I would need. Q. That was on a suggestion of yours? A. When she told me that she was going to leave me something in her will." There was no agreement by them both on a certain price at the time of this conversation. The price should be certain and determinate. Civil Code, art. 2671. Otherwise the contract is null. Civil Code, art. 2672; University v. Piffet, 34 La. Ann. 602; Haughery v. Lee, 17 La. Ann. 22; Jordan v. Mead, 19 La. Ann. 101; Maestri v. Board,

110 La. 521, 34 South. 658. There was no time mentioned, as required by Civil Code, art. 2746, and the engagement could not have been for a longer period than five years. Civil Code, art. 167. Consent of both parties was lacking. There was no agreement between plaintiff and Mrs. Delmas to hire or lease plaintiff's services.

The corroborating circumstances of the alleged contract were (1) that plaintiff lived in Mrs. Delmas' home for 21 years; (2) that Mrs. Delmas told Mrs. Clarke in June, 1909, "I intend to leave Miss Ginnie (Caldwell) one thousand dollars"; to Mrs. Oglesby, "Ginnie must never want"; to Mr. Munson, a few years ago, to send a notary to her as she wanted to make a new will and provide for Miss Caldwell; "that when she was sick previously she had given Miss Virginia a check for $600, and afterwards took said check back, telling me her intention was to make it good in her will"; to Dr. Roussel, about two months before she died, that she wanted to provide for Miss Ginnie, and to send a notary to her. The most that can be said of these expressions of Mrs. Delmas is that they expressed an intention on her part to leave plaintiff a legacy of an uncertain sum as a liberality, not in the discharge of an obligation, which liberality she failed to carry out. This cannot be construed into a contract of employment, or become the basis of a judgment. Unequivocal words, expressive of mere intent, do not make an obligation. Civil Code, art. 1814; Watson v. Barber, 105 La. 804, 30 South. 127. And the court is powerless to assist plaintiff by making a will for the deceased, containing any expressed intentions of hers.

The attending circumstances which contradict, rather than corroborate, the contract sued upon are: (1) That Mrs. Delmas made a will in which she did not mention a contract with plaintiff, or make provision for her; (2) that Mrs. Delmas failed to mention

to her most intimate friends, or to any person disclosed by the record, that she had made a contract with plaintiff; (3) that she wrote to plaintiff, while away on a visit, that she was breaking up housekeeping to live with friends, and for plaintiff not to return; (4) to Miss Turner, she said that she had not willed plaintiff anything, and that she would not change her will; to Mr. Gooch, "that she had done all she could for Miss Ginnie and that she should go with her people;" to Mr. Williams, that in her will she had left legacies to certain members of her family which she wished to change and "to leave everything that she had to Miss Turner"; (5) plaintiff testified, "I never tried to influence Mrs. Delmas to leave me a nickel"; (6) plaintiff told Miss Turner and Mrs. Clarke that she had no idea of pay from Mrs. Delmas when she performed services for her, that she did it out of gratitude and for pure love for her; (7) she said to defendant, after the death of Mrs. Delmas, that she did not want any of Mrs. Delmas' money as it was not hers by right; (8) she said to her nephew, who came to see her, "that everybody said I ought to be compensated, and he asked me if I wished him to see to it for me, and I told him I supposed so, because I had nobody else, and he came to Franklin and engaged Mr. Milling for me and went on back to Texas"; (9) and plaintiff fixed upon the amount claimed after Mrs. Delmas' death for the value of the services rendered by her, and not for what she thought Mrs. Delmas was going to leave her in the will.

There was judgment in favor of plaintiff for $511.67, the value of services as nurse during the last year of Mrs. Delmas' life. The plea of prescription of one year, filed by defendant, had been sustained.

Defendant has answered the appeal, and asks that the judgment appealed from be amended by rejecting plaintiff's claim in its entirety, or that it be reduced. Defendant argues that the suit being based upon a contract, and the court having found that there was no contract, that the suit should be dismissed. An examination of the petition discloses that while plaintiff places her main demand upon an alleged contract she also alleges that she rendered services as a nurse, which were not embraced within the terms of the contract. The evidence of the services as nurse was properly admitted, and the trial judge has properly estimated their value. Succession of McNamara, 48 La. Ann. 45, 18 South. 908.

While it is true that Mrs. Delmas employed trained and untrained nurses to attend her, it is also true that plaintiff assisted in this particular and necessary work.

The judgment appealed from is affirmed at appellant's cost.