ST. PAUL, J.
This case involves only a question of fact. The deceased was 83 years of age and had never married. He left an estate aggregating over $90,000, out of which he willed some $36,000 in special legacies, including a legacy of $14,000 to one, J. O. Blanchet, whom he named as his executor. The balance he left to his brother, Laurent Rageur.
Included in the inventory of his estate was a mortgage note for $7,840, executed by said J. O. Blanchet, who, however, protested at the time said note did not form part of the succession, having been remitted by the deceased before his death.
This is a proceeding by said Blanchet to have said note declared no part of the estate of the deceased. And the rule is contested by the universal legatee.
*100 I.
The evidence for plaintiff shows that the deceased had been an intimate friend of Blanchet’s father, and was godfather to Blanchet; that for nearly 30 years he was boarded by Blanchet without charge, and for some 10 or 12 years was both boarded and lodged on the same terms.
Arthur Boulet testified that shortly before the death of Rageur he met him and—
“I asked him if his papers were fixed, and he told me, ‘Yes.’ He said: ‘Don’t worry, my godchild, you have your share also.’ Then I asked him how about Blanchet, as I knew he had a note against Blanchet. I asked him what he did with that note. He said, ‘Well, I want to tear it up.’ ”
Hilarie Boutte testified that during the illness of Rageur (two or three days after he fell sick):
“I got there one morning, and the old man asked me where was Odillon [Blanchet]. I got out of the door, and I called Mr. Odillon and told him he wanted something. * * * When Blanchet came, he told him, ‘Get your note; I give it to you; tear it up.’ ”
Milton Blanchet, son of Odillon Blanchet, testified that two or three days after Rageur fell sick:
“He called me about midnight, and asked me to call papa. I asked him what he wanted with papa, and he told me he wanted to tell him to tear the note he had against him. And I went and called papa, so he repeated it to papa. * * * He told papa to tear the note, destroy the note, that he had against him. Milton Dupuis was there, that is all.
“Q. The occasion you are testifying to is different from the one on which B.outte was there. iA. Yes, sir.”.
Odillon Blanchet testifies:
“One morning Boutte was hollering at me, and he says, ‘Mr. Francois [Rageur] wants to see you.’ And when I arrived he raised up a hand down in his bed and he says, ‘That note— I can’t walk — but that note; I want you to take it a^d tear it when you open that safe. I haven’t left you enough; I want you to take that note and tear it. I want to give it to you; you all understand it.’ * * * The next day he called my son, and again told my son to call us up; and we went, and he again explained, he says, ‘About that paper, you understand what I told you; I want you to take it and tear it; it is yours.’ ”
II.
On the other hand, Milton Dupuis, mentioned as being present by Milton Blanchet, was not called to testify, and the presumption therefore is that his testimony would not have aided plaintiff in rule. Iberia Cypress Co. v. Thorgeson, 116 La. 218, 40 South. 682.
And there is some testimony by John Rageur and Joseph Doróuen, son and son-in-law of Laurent Rageur, tending to impeach the testimony of the witness Hilaire Boutte.
Also it is shown that, although Laurent Rageur was in the house with his sick brother for some 10 days or more before his death, the latter made no mention to him about the remission of the note; nor did Hilaire Boutte or Milton Blanchet or Odillon Blanchet make any mention thereof until after the death of Rageur.
And Laurent Rageur testifies that his brother had told him, some time before his death:
“My business is correct; my will is there, and my board, a long time after I will be dead, will be paid for, the way my business is fixed.”
III.
Under the circumstances, we do not think that the evidence herein suffices to establish a remission of the note in controversy.
In Allard v. Orleans Navigation Co., 12 Rob. 471, it was held that the renunciation of a right must be clearly proven by one seeking to avail himself of such renunciation.
A voluntary renunciation of a right is, -of course, a pure gratuity, and “nemo facil^ presumitur donare.”
*102 But alleged declarations by a dead man against his own interest are the weakest kind of evidence. In most instances such testimony is scarcely worth consideration. Bodenheimer v. Bodenheimer, 35 La. Ann. 1005, citing Succession of Fox, 2 Rob. 299; Wilder v. Franklin, 10 La. Ann. 279; Bringier v. Gordon, 14 La. Ann. 274.
In Caldwell v. Turner, 129 La. 19, 53 South. 695, this court said:
“The testimony of a plaintiff in his own favor to establish a large claim against a succession should be received with the greatest caution. It is, in itself, of the weakest character, and, unless strongly corroborated, cannot serve as a basis for a judgment of recovery”—citing Cutler v. Succession of Collins, 37 La. Ann. 95; Bodenheimer v. Bodenheimer, 35 La. Ann. 1005; Calhoun v. McKnight, 44 La. Ann. 578, 10 South. 783; Succession of Gabisso, 122 La. 829, 48 South. 277; Succession of Daste, 125 La. 657, 51 South. 677, 29 L. R. A. (N. S.) 297.
On the whole, therefore, we do not think that the other testimony in this case is sufficient to strongly corroborate that of Odillon Blanchet seeking to establish a large claim against a succession by alleged declarations of the deceased made almost in articulo mortis and not revealed until after his death.
We are always loath to disturb findings of fact by a trial judge; but in the case before us we are not dealing so much with the credibility of witnesses, as with the sufficiency of evidence. And our conclusion is that the testimony in this case is insufficient to establish the voluntary remission of this large note by the deceased as he lay upon his deathbed.
Decree.
The judgment appealed from is therefore reversed, and it is now ordered that the demand of plaintiff in rule be rejected, at his cost in both courts.
Rehearing refused by the WHOLE COURT.