### GOLDSMITH v. PARSONS.

No. 14674.

Court of Appeal of Louisiana. Orleans.

June 10, 1935.

880

Delvaille H. Theard and J. L. Warren Woodville, both of New Orleans, for appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit on a promissory note for $1,-757.75, with interest and attorneys' fees as stipulated in the note. Defendant, though admitting that he signed and delivered the note, contends that he is not liable for any part thereof. He alleged in his answer and testified on the witness stand that plaintiff's husband, a life insurance solicitor, who has since died and from whom plaintiff inherited the note, prevailed upon him to apply for life insurance policies totalling $50,000; that it was understood between them that the premiums should not be paid in cash, but should be represented by a promissory note payable nine months after its date, which note should be held by plaintiff's husband; that at the end of the nine months defendant should determine whether his financial affairs warranted his continuing the policies; and that, if he should decide to continue them, he should pay the note, but, if he should determine not to continue them, he should pay to plaintiff only that portion of the premiums which had been remitted to the company and should not be liable for the full amount shown on the note; in other words, that in the latter case the commission to which plaintiff's husband would otherwise have been entitled should be rebated.

When the matter was tried in the district court, defendant took the witness stand to testify concerning the verbal agreement. This testimony was objected to on the ground that it tended to vary by parol the terms of a written instrument. The evidence was admitted subject to the objection, and, when all the testimony had been adduced, there was judgment for plaintiff for the full amount of the note as prayed for. On appeal to this court we affirmed the judgment, being of the opinion that the parol evidence should not have been admitted to show an agreement different from that evidenced by the written instrument. Goldsmith v. Parsons (La. App.) 154 So. 68; Goldsmith v. Parsons (La. App.) (On Rehearing) 156 So. 822. After granting a writ of certiorari, the Supreme Court considered the matter, and, holding the testimony of Parsons to be admissible, remanded

the case to this court, with instructions that we "consider and pass upon the parol evidence offered by defendant touching the verbal agreement between defendant and Goldsmith." See Goldsmith v. Parsons (La. Sup.) 161 Co. 175, decided February 4, 1935, on rehearing, 161 So. 178, decided April 29, 1935.

It therefore becomes necessary that we consider all of the evidence with reference to the alleged verbal agreement. Mr. Parsons, as we have stated, testified substantially in accordance with the allegations of his answer. He stated that, although he had signed and delivered the note to Mr. Goldsmith, it was definitely understood that he was not to pay it unless he decided that his financial affairs made it advisable for him to retain the policies beyond the first year. He also stated that it was understood that, if he should not do so, the obligation represented by the note should fall and that he should pay to Mr. Goldsmith merely that amount to which the company itself should be entitled for the first year's premiums, and he further stated that, when the note became due, he found it impossible to pay it, and he realized that it would be impossible for him to continue the policies in existence beyond the first year.

Mr. Goldsmith having died long prior to the filing of this suit, there can be no contradiction by him of Mr. Parsons' statement, and Mrs. Goldsmith, the holder of the note, was forced to rely upon circumstantial evidence, of which there is much, and upon certain presumptions which, as we shall show, are most persuasive.

The evidence tendered by Mrs. Goldsmith shows that at no time did Mr. Parsons attempt to ascertain from Mr. Goldsmith or from her after her husband's death the sum for which he was indebted even under his understanding of the alleged agreement, but that he allowed the note for the full amount to remain in Mr. Goldsmith's possession, and at no time demanded that it be returned or canceled and that an agreement be reached as to the exact amount due.

Further than this, Mr. Parsons admitted that, long after the maturity of the note and after he had determined that he could not continue the policies in force, he made payments on account to Mr. Goldsmith and later to Mrs. Goldsmith, and that, even when he made these payments, he did not call attention to the fact that he was not liable on the note, but was only making payments in accordance with the verbal agreement.

Mrs. Goldsmith testified that she called on defendant many times, and that he agreed

to pay $10 each month, and repeated this promise from month to month for nearly a year—though he actually made only one payment—and that on none of these visits did he mention to her the alleged fact that the note was not to be paid in full; that he did not refer to the verbal agreement which he now contends existed.

Mr. Goldsmith's former secretary, who had been in his employ for almost ten years, stated that she had never known him to rebate any part of any premiums due on any policy sold by him.

It cannot be overlooked that such an agreement as Mr. Parsons contends for would have been violative of an express statute of this state, for section 9 of Act No. 114 of 1898 provides in part as follows: " * * * Nor shall any * * * company or agent, subagent, broker, or any other person, pay or allow, or offer to pay or allow, as inducement to insurance, any rebate or premium payable on the policy, or any special favor or advantage. * * *"

■ Mr. Goldsmith was an experienced life insurance agent, and Mr. Parsons was and is an able and experienced lawyer. Both are presumed to have been aware of the provisions of that statute, and, unless proof to the contrary is clear, we must presume that they did not intend to violate it.

We are admonished by the Supreme Court, in the opinion rendered by it in support of its refusal of a rehearing, that, though we cipal Agreement, and agrees to make pay-must consider the evidence of Mr. Parsons, we must bear in mind that "there are a long line of decisions holding that the uncorroborated testimony of a single witness to establish a claim or right against a deceased person is the weakest kind of evidence."

■ It has many times been held that such evidence should be scrutinized very carefully.

In Bringier v. Gordon, 14 La. Ann. 274, it was said by the court: "The evidence of a single witness to establish acknowledgments of indebtedness on the part of a deceased person, is held to be the weakest species of evidence known to the law, and will be received with disfavor."

In Bodenheimer v. Bodenheimer's Ex'rs, 35 La. Ann. 1005, 1007, the court held that: "Extra-judicial admissions of a dead man are the weakest of all evidence. They cannot be contradicted. No fear of detection in false swearing impends over the witness. In most instances such testimony is scarcely worthy of consideration."

In a syllabus in Succession of Townsend, 40 La. Ann. 66, 3 So. 488, 489, appears the following: "Extra judicial statements of deceased persons have always ranked as the weakest evidence, and when reported to have been made to single witnesses, in the presence of no one else, generally disregarded."

Practically the identical language appears in a syllabus written by the court in Succession of Gabisso, 122 La. 824, 48 So. 277.

And in the Succession of Rageur, 155 La. 97, 98 So. 853, 854, is found the following: " * * * Alleged declarations by a dead man against his own interest are the weakest kind of evidence. In most instances such testimony is scarcely worth consideration."

Statutory enactments indicate plainly that it is the public policy of this state that such evidence is not to be looked upon favorably. True enough, none of these statutes is applicable directly to the situation presented here, but each indicates the views of the legislators on the subject of the extent of proof which should be required in matters of this kind. In Act No. 11 of 1926 it is provided that parol evidence is incompetent and inadmissible to prove a debt or a liability of a deceased person if the suit is brought more than twelve months after the death, and it is further provided that, if the suit is brought within twelve months following the death, parol evidence is incompetent to prove the debt, unless it is corroborated by the testimony of at least one credible witness in addition to the plaintiff, or unless it be to corroborate a written acknowledgment or a promise to pay executed by the debtor. Of course, it must be conceded that this is not a suit against the succession of a deceased person. Nevertheless, it is an attempt to deprive the estate of a deceased person of something to which that estate would otherwise be entitled, and therefore, though the act does not specifically apply to this situation, the public policy indicated by it requires that we look upon the testimony with extreme care.

Article 2277 of the Civil Code indicates that there must be corroborative circumstances in addition to the testimony of one credible witness, where the amount in dispute exceeds $500, as it does here, and, although it has been held that this article does not apply where it is sought to establish a defense to a claim and not to prove a claim itself (Palmer v. Dinn, 2 La. Ann. 536), nevertheless here again we feel that the policy indicated by the codal article requires a careful scrutiny of the testimony.

Looking at the testimony as a whole and bearing in mind that the defendant admitted that he had never stated either to Mr. Goldsmith or Mrs. Goldsmith that there was a verbal agreement, we find it impossible to convince ourselves that the defense urged here should be allowed to prevail.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.