### MILLS v. Succession of BORSKEY.
### No. 1499.

Court of Appeal of Louisiana.   First Circuit.
Oct. 3, 1935.

John Fred Odom, of Baton Rouge, for appellant.

Clyde C. Ratcliff and G. Caldwell Herget, both of Baton Rouge, for appellee.

ELLIOTT, Judge.

Dr. Thomas L. Mills claims of William C. Borskey, administrator of the succession of Robert W. Borskey, the sum of $1,116.30 alleged to be due him for services rendered as physician and for moneys loaned, merchandise and medicine bought for and furnished R. W. Borskey, deceased. It is alleged that a part of the indebtedness has been acknowledged in writing, but that a part remains as an open account, the balance due after all credits have been allowed being the amount above stated.

William C. Borskey, administrator, for answer denied that Robert W. Borskey at his death owed the plaintiff, denied that the decedent had acknowledged any part of the alleged indebtedness in writing and denied that plaintiff had rendered the professional services, loaned money, bought merchandise and medicine for the decedent, as claimed in his petition. Further answering, he alternatively alleged that if the plaintiff did render service, loan money, buy merchandise and medicine for the decedent as claimed, that Robert W. Borskey had paid him all that he owed him, and owed him nothing at the time of his death.

The administrator subsequently filed a plea urging the prescription of three years as a bar against that part of plaintiff's suit said to be on open account. This plea was overruled and judgment rendered in favor of the plaintiff as prayed for.

The defendant has appealed.

Defendant urges the provisions of Act No. 11 of 1926, § 2, as prohibiting the consideration of parol evidence to corroborate the acknowledgment adduced by plaintiff.

Due to the conclusion at which we have arrived on the question of defendant's liability, we do not review the ruling of the lower court, overruling defendant's plea of prescription, nor act on defendant's contention that parol evidence is not admissible under the provisions of Act No. 11 of 1926, § 2, to corroborate the written acknowledgement relied on by plaintiff.

The record shows that Robert W. Borskey died at his home in the parish of East Baton Rouge on January 23, 1933. He was a bachelor, never married, and lived alone on a farm with no one in the house with him except a negro woman, as cook. His farm adjoined the plantation on which plaintiff resides. The record does not show his age at the time of his death, nor the amount of his property, except that it appears from the testimony of Dr. Mills that 50 or 60 head of cattle and about 50 head of sheep at one time belonged to him and were kept in a pasture belonging to Dr. Mills, but whether he owned them or not at the time of his death we are not informed.

It also appears from the testimony of Dr. Mills that he was in possession of some money. That at one time he had about $1,000 deposited in a bank in the name of his cook. That at one time he received between $500 and $1,000 as damages on account of an injury received in an automobile collision, but it may be that this is the same money he had in the bank. He also had some gold which he kept concealed in a tin can, and the can he kept concealed in a room called the beehive room. He showed the gold to Dr. Mills and the place where it was concealed. After Borskey's death Dr. Mills, very properly, we think, under the circumstances, took the gold and other money, mostly gold, hidden on the premises, counted it in the presence of the cook and another person, in amount $425, and delivered it to Mr. Odom, attorney for the plaintiff.

As defendant denied that Robert W. Borskey at his death owed the plaintiff and denied that the decedent had signed the written acknowledgment adduced by plaintiff, it was incumbent on the plaintiff to prove these facts. The signature of Robert W. Borskey to the acknowledgment was proved by the testimony of J. T. Young. Therefore, ordinarily, there being no averment of fraud or error, the acknowledgment would be accepted as proof of what it purports to acknowledge without looking behind it, but the situation in this case requires an examination of the indebtedness alleged.

After Borskey's death, plaintiff, who had been his physician during his last illness and for many years past, acting on the

request of the administrator, made out an itemized account against the estate, showing the sum he claimed to be due him, and presented it for payment. This account is before us. It commences February 12, 1915, and terminates with a charge made January 23, 1933, which was the day on which Borskey died. It was sworn to on February 23, 1933. Plaintiff testifies that it is correct, that it was taken from his books, etc. Dr. Mills was questioned in regard to it, and it was then offered in evidence by the defendant for the purpose of showing the difference between the amount claimed on this account up to December 20, 1926, the date of the acknowledgment, and the amount acknowledged, and was received in evidence for the purpose without objection. The account thus made out, added up to December 20, 1926, the date of the acknowledgment, amounts to $593.57. During the time from February 12, 1915, to December 20, 1926, credits to the amount of $156.-65 were entered in the account, leaving but $434.92 due at that time. As the amount acknowledged was $657, there exists a difference of $223.92 between the amount actually due on December 20, 1926, and the amount stated in the acknowledgment.

The plaintiff was asked: "Q. Can you explain to us why there is a discrepancy between the two accounts, the one you filed with me and the one on which you filed suit? A. I do not know, unless there is an item in there for $100 for cash I loaned him with the interest added. I do not know whether it is itemized on this statement."

The $100 referred to is charged under date of April 15, 1926, about eight months before the acknowledgment, and is included in the amount acknowledged.

Plaintiff suggests in his brief that he may have rendered some other service or furnished some other merchandise which was taken into account in fixing on the amount acknowledged, but plaintiff testifies that the account made out, commencing February 12, 1915, and presented to the administrator for payment, was the beginning of his account against the decedent. The overacknowledgment is in fact not explained, and it casts the gravest kind of doubt on the amount justly due the plaintiff at the time the acknowledgment was obtained. The doubt and uncertainty is not removed by simply taking $223.92 from $657 and accepting the balance as the correct amount due up to that date. There remains another matter. The account from February 12,

1915, terminating January 23, 1933, amounts to a total of $1,282.12, subject to credits entered in amount $183.15, leaving $1,104.-97, which plaintiff claims as the balance due him.

The amount claimed in plaintiff's petition, counting the account acknowledged and the balance claimed since then as open account, after deducting a credit of $24.50, leaves, according to an account attached to the petition, a total of $1,116.30. This amount plaintiff claims of the administrator and prays for judgment accordingly. The record shows that the administrator conceded that Dr. Mills was entitled to $212.75 on account of the last illness of the decedent, and this amount was paid him by the administrator before suit was filed. Consequently, in plaintiff's petition herein based on the said acknowledgment and subsequent open account attached to the petition, the amount of $212.75 received on account of expenses of last illness is not included in the demand. But the expenses of last illness were included in the account made out from February 12, 1915, to January 23, 1933, and the amount $212.75, paid since then deducted from $1,104.97 leaves but $892.22; yet we have the plaintiff claiming in his suit $1,116.30, which is $214.08 more than is due him if his first account was correct.

Another matter is the time that has passed without effort on the part of Dr. Mills while Robert W. Borskey was living to obtain from him a settlement of this account. Between February 12, 1915, the date the itemized account commences, and January 23, 1933, when it terminated, there elapsed 18 years, 11 months, and 11 days. During this time, except for the year 1930, during which no charge appears, the indebtedness is piled up from year to year as if pursuant to a plan, until Borskey died. The itemized account commencing February 12, 1915, shows that it is for visits to Robert W. Borskey too numerous to mention, mostly in the daytime, but often at night, and sometimes the charge is for an all-night visit, prescriptions and medicines and other things bought for Robert W. Borskey. It appears that Dr. Mills was out considerable cash paid to nurses. There appears a charge of $12 paid to Alice Shropshire for nursing on January 31, 1919; $65 paid Arthur Brow on December 2, 1922, and $5 paid Molly Davis on January 14, 1929. And on April, 15, 1926, he loaned Borskey $100 cash. Other charges are for whisky often

purchased. And on May 28, 1918, Borskey is charged $10 for vaccinating cattle, and on September 16, 1922, $7 for vaccinating cattle. It may be that Dr. Mills was not in need of money, but from what Dr. Mills says, Borskey could have paid part and possibly all he owed at any time. And to the knowledge of the plaintiff there was seemingly the ever-present danger that Borskey's available cash might disappear at any time; still the plaintiff manifested no desire to have his account paid until after the debtor's death, when it was for the first time requested of the administrator.

The acknowledgment relied on by the plaintiff is in form as follows: "Dec. 20—1926. The a/c of Dr. T L Mills against me for six hundred and fifty-seven dollars ($657.00) is just due and unpaid." Signed by R. W. Borskey with T. W. Young and J. T. Young as witnesses. We note that the acknowledgment is without a stipulation to pay. Between February 12, 1915, the date the account presented to the administrator commences, and December 20, 1926, when the acknowledgment was obtained, there had elapsed 11 years, 10 months, and 8 days. Between December 20, 1926, the date of the acknowledgment, and January 23, 1923, when the last charge was made, there had elapsed 6 years, 1 month, and 3 days.

In Bodenheimer et al. v. Executors of Bodenheimer, 35 La. Ann. 1005, the syllabus reads in part: "The evidence of a claim that has long been delayed in its prosecution, when no hinderance was in the way, must be more conclusive than in ordinary circumstances. It must be established with more than reasonable certainty."

In Wood v. Egan, 39 La. Ann. 684, 2 So. 191, the syllabus reads: "A stale demand, long withheld from presentation or prosecution, until he against whom it is preferred has died, is regarded with disfavor. It must be established, when no hinderance was in the way, with more than reasonable certainty. The unfavorable presumption created by the delay can be removed only by peculiarly strong and exceptionally conclusive testimony."

From Ruling Case Law, vol. 10, subject, Equity, § 143, p. 396, we copy as follows: "While statements are to be found in some of the cases intimating that unreasonable delay and mere lapse of time, independently of any statute of limitations, constitutes a defense in a court of equity; the gener-

ally accepted doctrine appears to be, that laches is not limitation, a mere matter of time, but is principally a question of the inequity of permitting a claim to be enforced, this inequity being founded on some change in the condition or relations of the property of the parties. Since lapse of time has a tendency to obscure evidence and often makes it impossible to discover the truth, it is of course one of the elements to be considered by the court in applying laches to stale claims. But it is only one, and while it is important, it is not ordinarily the controlling or most important one. Hence it has been said laches, in legal significance is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition it matters little whether one presses a right promptly or slowly within limits allowed by law, but when knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right. When a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." Pertinent language from the same author may be found in sections 147 and 149.

From Moore on Facts, vol. 1, subject, Presumption; Inferences, § 550, pp. 522, 523, we take the following: "Judge Nisbet of Georgia speaking of the defense of laches and of the presumption entertained by courts of equity that a claim long withheld is unjust, continued as follows: In nine cases out of ten it is unjust in fact as well as in theory. And it is presumed and the presumption grows out of the principles of human nature developed in universal experience, that men will use reasonable diligence to get what rightly belongs to them. Our observation of men teaches that they are more likely hurriedly to assert false claim, than tardily to assert an equitable one."

Plaintiff admits that he received from the administrator the sum of $212.75 on account of his professional services rendered the decedent during his last illness, and in payment of medicines and cash advanced during said time, stated to have been from January 1, 1933, to January 23, 1933. As for the balance of plaintiff's claim, counting from February 12, 1915, including the

amount acknowledged December 20, 1926, and charges and items of every kind since then up to the commencement of Borskey's last illness, we are not satisfied that it is justly due. The overacknowledgment, not explained, the excessive amount claimed in suit based on account not explained, coupled with plaintiff's laches in asserting his claim, makes us feel that its equity is a matter of serious doubt and uncertainty.

It is provided, Code Prac. art. 155, that "One should only demand in court what is really due to him; nevertheless, if one demand more, the action shall be sustained for the amount actually due."

In this case we are satisfied that there is some amount due the plaintiff over and above the $212.75 received. But we are unable to satisfactorily fix on any particular amount to which we can say he is justly entitled under the showing made.

We have decided to reject plaintiff's demand as in case of nonsuit, in order that he may have, if he desires, another opportunity to bring his demand before the court.

For these reasons, the judgment appealed from is annulled, avoided, and set aside, and the demand of Dr. Thomas L. Mills against William C. Borskey, administrator, is now refused and rejected as in case of nonsuit.

Plaintiff-appellee to pay the cost in both courts.