On April 11, 1912, Sylvia Ashley contracted in writing to purchase from one B.B. Smith a house and lot in the City of Shreveport, Louisiana, for the price and sum of $650. Of this consideration, $100 was paid in cash, $25 was due sixty days after that date, and the balance was payable thereafter in monthly installments of $12.50 each.
Sylvia Ashley died intestate on February 8, 1940, or almost twenty-eight years later. Surviving her were a natural daughter, Artie Ashley Swift, and three legitimate sons, Ed, Al and Will Moffett.
Shortly after these sons had accepted the succession of decedent, purely, simply and unconditionally, and were sent into possession, as her sole heirs at law, of all the property of the estate, the natural daughter, Artie Ashley Swift, commenced this action, impleading them as defendants. It was filed within a year after decedent's death.
In the petition, plaintiff alleges that she purchased for and in the name of her said mother the above-mentioned house and lot *Page 94 
and paid in full therefor the purchase price of $650; and that the mother on May 10, 1913, agreed to the reimbursement of said sum, together with six (6%) per cent interest thereon from May 11, 1912, the obligation being due and payable after the mother's death when plaintiff would be paid out of the proceeds of the sale of the property. The prayer is for judgment for said amount and interest; that the property of the estate be sold; and that out of the proceeds of the sale she be paid by preference and priority over all other persons.
Defendants, in their joint answer, deny the allegations of the petition.
The demands of plaintiff were rejected and her suit dismissed, after a trial of the case. She appealed.
The controversy presents only the question of whether or not the claim urged has been established. The district judge, as shown by his well-considered written opinion in which the evidence adduced is discussed in detail, concluded that plaintiff had not sustained the burden which she carried.
The entire record has been thoroughly studied by us; but we shall present herein no similar detailed discussion of the evidence for no useful purpose would be served thereby.
The asserted indebtedness, which allegedly arose almost twenty-eight years before decedent's death, is not supported by any writing. Only parol evidence is resorted to in proof of it.
Plaintiff testified that over a period of several years beginning in 1912, she paid for the house and lot with her own money, all in accordance with a reimbursement obligation of her mother that would mature on the latter's death. But it is not clear, as the trial judge points out, whether "she claims that the property belongs to her and was placed in the name of her mother for convenience, or whether she is claiming that a loan was made to her mother." In this connection she declared at one place in her testimony that she was to get the money; at another the property was hers at the mother's death; and again she said: "I was to get the money back with the house with six (6%) per cent, after her death."
The remaining proof offered by plaintiff consisted primarily of the testimony of three other persons to the effect that they, on various occasions, held conversations with the mother wherein she stated that she was indebted to plaintiff; however, none was ever informed as to the amount of the indebtedness or what it represented. Further, one of those persons told of having held the notes evidencing part of the purchase price of the property and that plaintiff paid and received each note; but these instruments were not produced or accounted for on the trial of the case.
Numerous witnesses, including close friends and neighbors of decedent and the three defendants, testified in opposition to the claim. None had ever heard decedent mention an indebtedness owing to plaintiff, notwithstanding the fact that each was frequently with her.
Also favoring the defense are the circumstances, shown by the record, that decedent owned at her death two other pieces of improved property which she had paid for with her own earnings; and that she was able to and did lend money on several occasions.
The testimony of the above-mentioned three witnesses appearing for plaintiff had little if any probative value because it was vague and indefinite. Also, it concerned for the most part declarations against interest assertedly made by the decedent, a kind of evidence that is exceedingly weak and is scarcely worthy of consideration. Bodenheimer v. Executors of Bodenheimer, 35 La.Ann. 1005; Murphy et al. v. Murphy, 136 La. 17, 66 So. 382; Succession of Rageur, 155 La. 97, 98 So. 853.
This unsatisfactory evidence and the contradictory statements of plaintiff, considered along with the testimony of the defense witnesses and the proven thriftiness of decedent, prompted the conclusion of the trial court. With it we cannot disagree.
The several authorities cited by plaintiff's counsel are readily distinguishable from this controversy. The evidence offered in each of those cases in proof of the claim urged was more definite and certain than that produced here.
The judgment is affirmed. *Page 95