Succession of Celeste Croizet, Widow Gondran—On Opposition to Account of S. Gondran, Administrator.

12   401
44   432

*Proof of verbal acknowledgments of indebtedness is not entitled to much weight, particularly after the death of the person who is alleged to have made them.*

*Where a minor arrived at the age of majority gives a receipt to his tutor, the receipt is not conclusive against him, and the fact which it recites may be contradicted by oral testimony.*

APPEAL from the District Court of West Baton Rouge, *Robertson*, J.

*U. B. & E. Phillips* and *F. O. Bouis*, for opponents and appellants.

*A. Provosty*, for the appellee.

Cole, J.  *Madame Julie Celeste Croizet*, widow of *Pierre Gondran*, died in October, 1853 ; her son, *Simon Gondran*, was appointed administrator of her estate on the 3d November, 1853.  Her heirs were there, to wit, *Simon Gondran*, *Adele Gondran*, wife of *F. O. Bouis*, and *Martin O. LeBlanc*, son of *Julia Bouis*, wife of *Octave LeBlanc*.

*Julia Bouis* was the daughter of *Madame Gondran* by a former marriage.

On the 10th February, 1855, more than a year after the administrator was appointed, *Martin O. LeBlanc* took a rule to compel him to file an account. It was rendered on the 9th March, but no vouchers were filed, and afterwards an order was obtained, which directed him to file them.

Oppositions were made by *M. O. LeBlanc* to the original and amended tableaus, and an opposition was offered to be filed, by *F. O. Bouis*, for his claim as overseer, which had been put on the tableau, but for which the administrator took a nonsuit.  The District Court objected to receive it as coming too late.

The oppositions of *LeBlanc* were sustained in part by the lower court.

*LeBlanc*, *Bouis* and the administrator have appealed.

The principal items objected to by *LeBlanc* are the claims of *F. O. Bouis*, and an item put down in the tableau as being due *Simon Gondran*, the administrator, by the deceased, as his tutrix, for the balance due him in the estate of his father, *Pierre Gondran*.

We will advert first to the claims of *Bouis*, who is the principal creditor of the succession.  They amount in principal and interest to about $20,000.

They consist of, 1st.  A note made by *Madame Gondran* to him or order for $8,591 38, dated 10th June, 1848, payable in March, 1849, with eight per cent. after maturity.  2d.  An account for his wages, as overseer and hire of negroes, $5,196 66.  And 3d.  Note in favor of *A. Robin*, paid by him, with eight per cent. interest, from 10th April, 1854, for $1,568 89.

*Bouis* was son-in-law of deceased, and lived with his family in her house from 1842 to 1853.

He acted also as her agent from 1848 to 1852 ; shipped molasses in his own name from *Madame Gondran's* place for several years, and received the proceeds amounting to $7,058 66.

It was the duty of *Bouis* to have presented an accurate account of his transactions in his fiduciary capacity.

He has not done this, and he seeks to sustain a part of his demand by proof of verbal acknowledgments of indebtedness on the part of the deceased.

51

Not much weight is given in law to this species of evidence, particularly when such recognition is pretended to have been made by one since deceased.

We do not doubt the integrity of the witnesses, but it must be remembered, that this confession of debt was made by one who probably knew but little about her business, and had confided for years the administration of a great part of her affairs to *Bouis*, and who, it is likely, was not aware of the exact relations of her affairs with him, of the manner in which he had conducted them, of his responsibilities to her, of the debts he had paid or created in her behalf.

When these things are considered, such acknowledgments can have but small effect, particularly as she is dead; for if *Mrs. Gondran* was living, she could plead that this recognition was made in error, and that she was not aware of the real condition of affairs between *Bouis* and herself.

The Judge *a quo* viewed the obligation of *Bouis*, as agent, to render an account, and the character of such acknowledgments, in the same light that has just been portrayed.

He rejected his claim for wages, as overseer, but allowed $3,300 for hire of negroes, from which sum, he deducted $2,900 50, credits by amounts paid *Bouis* as admitted in his account.

The lower court made this deduction on the principle, that as *Bouis* had not rendered a perfect statement of his acts as agent, the credits in his account rendered, admitted by him, must be charged against him, without considering as correct, unless proved, the other portions of his account that consisted of charges against the estate.

The Judge *a quo* also allowed *Bouis* the note of $8,591 38 and interest; opponent offered testimony to show, that *Bouis* had shipped molasses belonging to *Mrs. Gondran*, at various times, the proceeds of which exceeded six thousand dollars, and came into his hands.

The counsel of administrator objected to such testimony to establish a credit on the note, as it was not an amount equally liquidated. The court rejected it, believing it was inadmissible as a plea in compensation on the note.

This was erroneous. *Bouis* was the agent of *Mrs. Gondran;* the moment then he received her funds, and appropriated them to himself, compensation took place between an amount, that she owed him, equal to that he had appropriated, and although he may have held claims of various kinds against her, the law imputes the payment to the most onerous, which was the note.

As to the plea that the amount of the proceeds was not equally liquidated, this is incorrect, because money paid is certainly as much liquidated as a note, and in the opinion of the generality of mankind, more so; payment can always be plead.

*Bouis* held claims against deceased; it is not to be presumed he intended feloniously to keep the proceeds of the molasses, but when he appropriated them he considered them as a payment *pro tanto*, and as he has not accounted for them, they might be placed to their account as an off-set to the note ; but the evidence shows, he paid some claims for her, and transacted generally her business. It is just then to give *Bouis* an opportunity in the lower court to render an exact account of his relations as agent for the deceased, to show all the sums received, and disbursed, at what time each amount came into his hands and was paid out; also, a full account of his claims against *Mrs. Gondran* and the credits thereon. He could not censure us if we were to render

judgment on the evidence now before us, for it was his duty to have rendered such an account when he presented his claim against a deceased person, but we have concluded to give a nonsuit on all his demands against the estate, and permit him to present them hereafter in a proper form. It is impossible to do justice between him and the estate as the case now stands.

The other principle item opposed by *LeBlanc* is that of $3,656 25, as being due *Simon Gondran*, the administrator, for balance due him in the estate of his father, *Pierre Gondran*, by the deceased, as his tutrix.

The grounds of opposition are, that it has been paid; prescription is also plead. The evidence on the part of *LeBlanc*, the opponent, consists in an act of "quittance" passed before a public officer, in which *Simon Gondran* acknowledges to have received from his mother, the deceased, the full amount of this claim. ·

The District Court refused to admit evidence to prove that, in fact, he had never received from his mother the amount stated in the "quittance," and that he gave her the said receipt only to enable her to raise a loan by mortgaging her property, which she could not do so long as his legal mortgage remained the first on the records. The ground sustained by the court is, that the written receipt could not be contradicted by parol evidence.

The Judge *a quo* erred. This evidence was admissible; the act of "quittance" was null and void between the parties, it being in derogation of the law which declares, "that every agreement which may take place between the tutor and the minor arrived at age of majority, shall be null and void, unless the same was entered into after the rendering of a full account and delivery of the vouchers, the whole being made to appear by the receipt of the person to whom the account was rendered, ten days previous to the agreement." C. C. sec. 284, Art. 355.

This Article was enacted for the protection of minors, and if they have not the right to establish the real nature of their transactions with their tutors, the laws made for their protection would have no effect whatever. This receipt was signed by *Simon Gondran* about one year after he arrived at the age of majority. As a receipt, it is merely *prima facie* evidence of the fact of payment, and not conclusive, and, therefore, the fact which it recites may be contradicted by oral testimony. Vide 5 An. 408; 10 An. 749; and 9 An. 129.

The court also considered the claim barred by the prescription of four and five years.

Even supposing that under the circumstances of this case, prescription could be successfully plead, yet the party ought to have the opportunity of showing that the course of prescription was arrested, if such was the case, by some one of the modes pointed out by law.

This part of the tableau must be sent back for further action of the lower court.

The administrator has placed himself on the tableau for $1,384 85, being the total amount of commissions allowed by law on the whole assets of the estate. As this is only a provisional account, and the entire amount due the succession is not yet collected, he can only charge his fees on the part of the assets actually received by him. This tableau being, however, not artistically framed, does not exhibit what is the total sum that has been received by the administrator; there must, therefore, be a nonsuit for his commissions.

The account must be corrected also in two items, admitted by counsel of administrator in his brief to be just, to wit, for $177 for wood sold by the administrator and owned in partnership with the deceased, and for $250 cash found in the estate, for which no credit was given by error of counsel.

As regards the amended account filed on the 7th January, 1856, claiming upon the part of the administrator a credit against the estate of $2,160 for hire of slaves during the years 1850, 1851 and 1852, this claim is prescribed by Art. 3503 C. C. and is rejected.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be avoided and reversed; and proceeding to render such judgment as ought to have been rendered by the lower court, it is ordered, adjudged and decreed, that the account be amended as follows, to wit, that there be a non-suit in favor of *Simon Gondran*, administrator of the succession of *Julie Celeste Croizet*, widow of *P. Gondran*, against all the claims of *F. O. Bouis*, whether on the tableau or presented by way of opposition.

It is futher ordered, that the administrator must be charged with cash in hand, belonging to the estate, being two hundred and fifty dollars, and the administrator must charge himself with the amount of wood sold, as admitted by him, to wit, one hundred and seventy-seven dollars ($177); that the claim of *S. Gondran* for negro hire during the years 1850, 1851 and 1852, for $2,160 is rejected.

That there be a nonsuit in favor of the estate against the commissions of the administrator as put on the tableau.

It is further ordered, that this case be sent back to the lower court, only to have the claim examined and adjudicated upon, of *S. Gondran* for $3,656 25, being the alleged balance due him by the deceased, as his tutrix, in the estate of his father, *Pierre Gondran*; and the District Court is instructed to admit parol testimony offered in relation to the "quittance" given by him to his mother, by act passed before *Valery Ledoux*, the 2d April, 1849.

It is therefore further ordered, adjuged and decreed, that the account be amended in conformity with the above decree, and that it be homologated in all other respects, and that the administrator file an account within 20 days from the time this judgment is executory, in conformity to law, giving the credits and debits of the estate, and stating the balance in conformity with this judgment, and reserving, out of the funds on hand at the time of filing the present tableau, the *pro rata* share of *S. Gondran* for his claim aforesaid, of $3,656 25, or the whole of it, if said funds suffice to pay in full the claims of all the creditors on the tableau, as amended; that he distribute the balance of said funds among the creditors who are thereon according to this decree, according to their legal rank and privilege.

It is further ordered and decreed, that the costs, so far as incurred, of the lower court, be paid by the estate; that three-fourths of the costs of appeal be paid by the estate, and the other fourth thereof by *F. O. Bouis*.