PROVOSTY, J.
Martin H. Manion, son and executor of Martin Manion, deceased, filed an account of his administration. John E. Manion, brother of the executor, opposed an item of $5,000 which appeared in the account as a debt due by the succession to the succession of William .J. Manion, a deceased brother of the executor and of John E. Man-ion.
The debt is evidenced by the testimony of the executor and by the following document:
“5,000.00 of this amount is the property of Wm. J. Manion, or its equivalent of 5,000.00 value as quoted, or its worth in the open market of five shares Little Rock R. R.
“[Signed] M. Manion.”
Manion, father, had been retired from business for some years when in January, 1916, wishing to have something to occupy his mind, he expressed the desire to resume an active part in the management of the business of Manion & Co., a plumbing supply concern in which he held one Or two shares of stock, and of which his two sons, Martin H. and Wm. J., were the managers and large stockholders. William suggested to the old gentlemen that he take out $5,000 of stock nominally for himself but in reality for William, to be paid- for by William and this .was done; William turning over $5,000 of the bonds or shares of stock to the Little Rock Railroad Company to his father, to be sold and the proceeds used in paying for the $5,000 of stock thus to be taken out. The matter was discussed for several days. The executor testifies positively to all this, and that the $5,000 was never reimbursed or returned in any way to William. One year thereafter William died, and 10 days after William the father died. The entire burden of the management of the business fell upon Martin H., who besides was carrying on a considerable law-and notarial business. Martin H. Manion caused himself to be appointed administrator of the succession of his brother, and as notary made the inventory of -the succession. The claim now in question was not mentioned in the inventory, nor thereafter in the course of the settlement of the succession. In May, 1917, Martin H. Manion filed a provisional account as testamentary executor of liis father’s estate, and made therein no mention of this claim. He says that he had forgotten all about the transaction, and that he only remembered it some two months before the filing of the account now being opposed, in September, 1918, when his .memory was refreshed, or revived, by his - coming across the document herein-above transcribed, which he found in his father’s drawer of the safe of Manion & Co. *101 together with an old spectacle case and a pencil.
There is no denial of the genuineness of this document. The contention is that it does not substantiate the claim; that it fails to do so even when read in connection with the testimony of the executor.
The verity of this testimony is not expressly challenged: only its sufficiency, but every little circumstance that might tend to discredit it is dwelt upon and put in as strong a light as possible. We find no sufficient reason for doubting its entire candor. It is as nfuch against the pecuniary interest of the witness as against that of his brother; each must pay one-third of the debt if it is due, . and, whatever ill feeling the witness may entertain towards his brother, it could hardly induce him, a lawyer and a man of high standing, to deliberately perjure himself.
While it may be strange that the witness should have thus entirely forgotten this transaction and then later on remembered it so vividly, even in its details, very much stranger freaks of memory' than this are not so very uncommon. See Moore on Facts, Chap. Memory, Rubric, Memory Revived or Refreshed, § 833 et seq. The question cannot be as to whether the transaction in question did take place, for the document is an irrecusable witness to that fact. The question must be only as to whether there was a reimbursement; and on that point the testimony of the witness, as much against his own interest as that of his brother, is positive. With the stroke and mental bruise of the two deaths and the burden and oppression of the entire business, aggravated by the complications incident to the war, Martin Manion may well have lost memory of the said transaction. And all of us are too familiar with incidents of revived memory to wonder at an occurrence of the kind. We think our learned brother below erred in rejecting the claim.
[1] The opponent also asks that the executor be mulct in the statutory damages to which executors expose themselves by failure to deposit in bank all moneys coming into their hands for the successions they administer and to keep a bank book, C. C. 1150. The answer is that the succession had no funds, but on the contrary was debtor to Manion & Co., who furnished the money to pay its debts, until May, 1918, when a dividend was declared which covered the debt due Manion & Co., leaving a balance of only $193.35 payable to the succession; that this amount was not deposited in bank for the reason that the dividend had been declared merely in order that a drawing account might be created for the widow of Wm. J. Manion, and with the express understanding that the other shareholders should not withdraw any part of the dividend from the business, which just at that time, due to the largely increased price of 'all goods to be purchased, stood in sore need of all the funds it could get. Under those circumstances, the said balance of $193.35 cannot properly be said to have come into the hands of the executor. This opposition was rejected by the learned trial judge.
The judgment appealed from is set aside in so far as it sustained the opposition to the item “Due estate of William J. Manion, $5,000,” and condemns the succession to pay costs, and said opposition is now rejected; and the said judgment is otherwise affirmed. The costs of this appeal and of the said opposition to be paid by the opponent, John E. Manion.
MONROE, O. J., dissents.