(103 So. 294)

No. 26779.

## HAVA v. CAFIERO.

(Jan. 5, 1925. Rehearing Denied March 2, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Constitutional law ⬤⟻70(1)—Act prohibiting parol evidence of decedent's debt held not subject to construction.**

Act 207 of 1906, § 1, declaring parol evidence incompetent to prove debt of decedent, with certain exceptions, is unambiguous and legislative intent clear, so that Supreme Court, under Civ. Code, art. 13, cannot disregard its letter under pretext of pursuing its spirit.

2. **Executors and administrators ⬤⟻221(4)— Succession; statute held not to require that claim asserted within year after debtor's death be proved by credible witness besides plaintiff.**

Act 207 of 1906, § 1, does not require that claims asserted against decedent within year after death be established by testimony of one credible witness of good moral character besides plaintiff.

O'Niell, C. J., dissenting.

Certiorari to Court of Appeal, Parish of Ascension.

Action by Dr. Adrien Hava against Mrs. Victor Cafiero. Judgment of dismissal was affirmed by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Judgments set aside, and judgment for plaintiff ordered.

Howell & Wortham, of Thibodaux, for plaintiff.

C. C. Weber, of Donaldsonville, for defendant.

ROGERS, J. Plaintiff, who is a physician, brought suit against the widow and universal legatee of the late Joseph T. Cafiero to recover an amount alleged to be due him for professional services rendered to the deceased. The defense was a general denial.

The district court dismissed the suit, holding that, under the provisions of Act 207 of 1906, as interpreted by this court, plaintiff was precluded from recovery. This was also the view of the Court of Appeal, which affirmed the judgment.

The sole question presented for review, therefore, is whether the statute operates as a bar to a recovery by plaintiff.

Act 207 of 1906, § 1, reads as follows:

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that from and after the promulgation of this act, parol evidence shall be incompetent to prove any debt or liability upon the part of a party deceased, except it consist of testimony of at least one credible witness of good moral character besides the plaintiff; or except it be to corroborate a written acknowledgment or promise to pay, signed by the debtor; or unless an action upon the asserted indebtedness shall have been brought within a delay of twelve months after the decease of the debtor."

Plaintiff's claim was established by his own testimony, showing from his records exactly the number of visits, treatments, and prescriptions he had given the deceased, by the testimony of the druggist who had, during the time of the treatments, filled the prescriptions given deceased by plaintiff, by a friend of the deceased, who first accompanied the deceased to plaintiff's office, and at whose place of business deceased always called on his visits to New Orleans for the purpose of receiving treatment at the hands of plaintiff, and by plaintiff's collector, showing that shortly after the last visit of the deceased to plaintiff's office, and in due course of business, he had made out the account sued on and mailed it to the deceased at the address left by him, viz., Mayo's Sanitarium, Rochester, Minn., which letter was returned unclaimed.

In his reasons for overruling the motion for a new trial, the district judge stated the evidence had satisfied him that the deceased owed plaintiff the amount sued for, but as plaintiff had not proved his case by the testimony of at least one credible witness of good moral character, besides him-

self, as required by Act 207 of 1906, he was unable to render judgment in his favor. In support of this ruling the court cited the cases of Spillman v. Spillman, 147 La. 47, 84 So. 489, and the Succession of Manion, 148 La. 98, 86 So. 667. And it was on the authority, also, of these decisions that the Court of Appeal affirmed the judgment of the district court.

It is true that in Spillman v. Spillman, referred to, supra, this court, after first deciding that the legislative act did not apply to a suit brought within a delay of 12 months after the debtor's decease, on rehearing, held that the conjunction "or" between the second and third exceptions set forth in the statute should be read as if it were "and," so that plaintiff's testimony must be corroborated, though the action be brought within 12 months after the decease of the debtor. It is true, also, that in the Succession of Manion, referred to supra, this court, on rehearing, reaffirmed, in principle, the doctrine of the Spillman Case; not, however, on the ground that the word "and" should be substituted for the word "or," but for the reason that the word "or" as used in the statute was an affirmative, and not a negative, expression employed for the purpose of limiting the admissibility of parol evidence to prove any debt or liability of a deceased person only to suits brought within a delay of twelve months after the decease of the debtor. In thus interpreting the statute, this court, in both of those cases, went beyond the necessities thereof.

Although in the Spillman Case the suit was brought within the year after the death of the debtor, plaintiff's testimony was entirely uncorroborated, which was the real issue involved.

In the Manion Case the action was instituted more than a year after the death of the debtor, and the actual question involved was whether the testimony of one witness, taken in connection with the admittedly genuine, but vague and uncertain document declared on, was sufficient to establish the claim against the succession.

[1] The language of Act 207 of 1906 is unambiguous, and the legislative intent is clear. There is, therefore, no reason for construction, and we are not permitted to disregard the letter of the act under pretext of pursuing its spirit. Civ. Code, art 13. Succn. of Campbell, 115 La. 1040, 40 So. 449; State ex rel. Mize v. McElroy, 44 La. Ann. 796, 11 So. 133, 16 L. R. A. 278, 32 Am. St. Rep. 355; Succn. of Teaulet, 28 La. Ann. 42; Succn. of Taylor, 23 La. Ann. 24; Arrowsmith v. Durell, 21 La. Ann. 295.

[2] The statute provides clearly and expressly that parol evidence shall be incompetent to prove any debts against a deceased debtor except in three classes of cases. These exceptions are detailed one after another, and are disjunctively expressed, and this, we think, was done advisedly by the Legislature. There is no more reason for holding that the lawmaker intended the conjunction between the second and third exceptions to read as if it were "and," than there is for holding that the conjunctions between the first exception and the main portion of the statute and between the first and second exceptions should be read in the same way.

The act was enacted as a rule of public policy to curb the practice of presenting improper and stale claims against the heirs or legal representatives of deceased persons, and the words used indubitably express the legislative intent.

In our opinion the clear meaning of the statute is that, if a claim be made against a party deceased more than one year after his death, it must be established by the testimony of one creditable witness of good moral character, besides plaintiff, unless it be corroborated by a written acknowledgment or promise to pay signed by the debtor.

Claims asserted against deceased parties within one year after their deaths are not

affected by the provisions of the act. These claims, in general, are provable in the manner and form required for the proof of obligations.

To hold otherwise would nullify many of the ordinary business transactions. A claim good against a debtor one day would, by his sudden demise during the intervening night, be rendered worthless the next day. No charge account in a store, or other business establishment, would be secure, for it rarely happens that more than one clerk or other employe has personal knowledge of a particular sale or other transaction.

The doctrine of the cases of Spillman v. Spillman and Succession of Manion, referred to, supra, in so far as it conflicts with the views herein set forth, is expressly overruled.

For the reasons assigned, the judgments of the district court and the Court of Appeal are set aside, and it is now ordered that there be judgment in favor of plaintiff, Dr. Adrien Hava, and against the defendant, Mrs. Frances Vitorio Cafiero, in the full sum of $420 with legal interest thereon from April 21, 1921, until paid, and for all costs.

O'NIELL, C. J. (dissenting). From a careful reading of the evidence in this case, I am convinced that the opinion which we have handed down, overruling the three decisions in which we had interpreted the Act 207 of 1906, will not only tend to destroy the lawyers' faith in our jurisprudence, but will make the defendant widow pay a very doubtful claim against her husband's estate.

The majority opinion, from which I have dissented, reads as if Dr. Hava had sued on a quantum meruit, for the value of professional services actually rendered. But that is not the case. The suit was on an alleged verbal contract, and the attorney for the plaintiff frankly conceded twice during the trial that he was confining his evidence to proof of the alleged contract.

The testimony of Dr. Hava, saying that the defendant's husband, Joseph T. Cafiero, now deceased, had verbally agreed to pay $15 a month for the doctor's services, is not corroborated by any circumstance whatever. Surely, the statement of the doctor, which may be conceded to be true, that Cafiero called at his office 27 times in the year 1919, 20 times in the year 1920, and once in the year 1921, does not tend to corroborate the doctor's statement that Cafiero was under contract to pay him $15 a month for his services; that is, $180 for the 27 visits in 1919, $180 for the 20 visits in 1920, and $60 for the one visit in 1921. That is the way Dr. Hava has itemized his claim. It is true he testified that he also prescribed for Cafiero several times by letter, twice in November, 1919, during which month Cafiero did not visit the doctor's office at all, and once in May, 1920, during which month again Cafiero did not visit the doctor's office, and once when Cafiero was in New York, and once when he was in Texas. But those five prescriptions, added to the 48 visits to the doctor's office, would not run up the doctor's bill to the $420 sued for and allowed by the judgment of this court. Besides, a considerable portion of the doctor's bill might have been met by a plea of prescription if the suit had not been based upon an alleged verbal contract. Rev. Civ. Code, art. 3538.

It is said in the majority opinion that the proof of the alleged verbal contract was established, not only by the testimony of Dr. Hava, but also (1) by the testimony of the druggist who filled the prescriptions which the doctor gave to Cafiero; and (2) by the testimony of a mutual friend of Cafiero and Dr. Hava, who introduced Cafiero to the doctor, and at whose place of business Cafiero always called when he came to New Orleans to see the doctor; and (3) by Dr. Hava's bill collector who "made out the account

sued on," and mailed it to Cafiero, in care of Mayo Brothers' Sanitarium in Rochester, Minn., immediately after Cafiero's last visit to Dr. Hava's office in New Orleans.

The three witnesses referred to, the druggist, Levi, the mutual friend, Stein, and the so-called collector, Arnoult, all admitted, on cross-examination, that they had no knowledge whatever of any contract or agreement between Cafiero and Dr. Hava. All that Levi said was that he had filled the prescription; but he did not pretend to know how many prescriptions he had filled for Cafiero. All that Stein said was that, when Cafiero was taken sick at Stein's place of business in New Orleans, he asked to be taken to Dr. Bel; that Stein took him to Dr. Bel's office, and, Dr. Bel being absent from the city, took him to his, Stein's, friend, Dr. Hava. Thereafter, Stein said, he saw Cafiero several times at Doctor Hava's office, and knew that he went there often. The so-called collector, Arnoult, said that he was in the real estate and insurance business, and had "been making out his (Dr. Hava's) bills and accounts since 1907;" that he had seen Cafiero but once or twice, and, on that occasion, or those occasions, Cafiero was in Doctor Hava's office; that, on the 27th or 28th of April, 1921, Dr. Hava phoned him, Arnoult, to come over to the office and make out a bill; and that he made out and mailed the bill. That was either one day or two days after Cafiero's last visit to Dr. Hava's office, according to the doctor's testimony, for the last visit was on April 26, 1921. There was no bill or account either attached to the plaintiff's petition or filed in evidence. Dr. Hava, testifying to the dates of the 48 visits to his office, referred to a memorandum which he said he had taken from his books. There was no pretense of a memorandum of any verbal contract either on the doctor's books or in his possession. Therefore, the so-called collector or bookkeeper, Arnoult, in making

out the bill from the doctor's books, as Arnoult said he made it, must have made merely a list of the 48 visits; for there was no memorandum of a verbal contract or agreement. Here is Arnoult's testimony on the subject:

"Q. Did you ever make out a bill to Mr. Cafiero?

"A. Towards the latter part of April, 1921—I think it was the 27th or 28th—Dr. Hava phoned me, and told me he wanted a bill made, and I went over to his office and took his books and made a bill to Mr. Cafiero, and Dr. Hava told me to mail it to Mayo Brothers' Sanitarium, Rochester, Minn., and the envelope had a return card on it, and it came back about 14 days later with a rubber stamp on it, 'Unknown at this address.'

"Q. That is all you know about it?

"A. That is all."

The bill, which is said to have come back from Mayo Brothers' Sanitarium, was not produced or offered in evidence; neither was the rubber stamped envelope. Cafiero was alive when the bill was made out, April 27th or 28th, 1921. He died on the 23d of September, 1921. Dr. Hava admitted, in his testimony, that the only bill he had ever sent to Cafiero was the one that was sent to Rochester, which was returned in the unopened envelope, stamped: "Unknown at this address." Dr. Hava admitted that the only demand he ever made was upon Cafiero's widow, after the doctor was informed by another of his patients that Cafiero was dead.

The testimony of Levi, the druggist, was quite favorable to the widow, for Levi testified that Cafiero always paid his drug bills promptly. Stein's testimony was also far more favorable to the widow than to Dr. Hava for, when Stein was asked, on cross-examination, whether he knew Cafiero's reputation for paying his debts, Stein said it was "the best in the world." And there was not the slightest contradiction of Cafiero's reputation in that respect. Cafiero was a business man. He was proprietor of a hardware store in

Donaldsonville, and was engaged in the business of repairing sugar factories, and building derricks. Aside from the testimony of Dr. Hava, there would not be the slightest presumption, or reason to believe, that a man of Cafiero's reputation and financial standing would allow his doctor's bills, of a few dollars per visit—even if they amounted to as much as $15 a month—to go unpaid, for nearly three years, from the 7th of January, 1919, the date of his first visit to Dr. Hava, to the 23d of September, 1921, the date of Cafiero's death. Dr. Hava testified that Cafiero had never paid him anything.

The defendant widow, of course, had no evidence to offer. The record of the succession of her husband showed that he did not owe any debt whatever. The widow lived in Donaldsonville, where the suit was tried. She was ill at the time of the trial. It was agreed that she would testify, subject to the plaintiff's objection to the admissibility of the statement, that her husband had told her several times that he had always paid his doctor's bills promptly and did not owe Dr. Hava anything. The testimony was objected to, on the ground that it was hearsay evidence, and the objection was sustained. The ruling was correct, because the alleged statement of the party deceased was in its nature a self-serving declaration. But the rule which excludes such evidence goes far in emphasizing the wisdom and the justice of the law which requires something more than the testimony of the claimant himself to sustain a demand like this against a dead man. It was admitted that the widow would swear that she had never seen a bill from Dr. Hava. And the doctor admitted that he had never made a demand or rendered a bill for his services to Cafiero, except the one which he said was sent to Rochester and returned, and which was not produced or offered in evidence.

The district judge, in his written reasons for judgment, did not say or intimate that he thought that Dr. Hava had proven his alleged verbal contract. On the contrary, the judge said, after quoting the Act 207 of 1906:

"In the case at bar, no written acknowledgment or promise to pay, signed by the debtor, was offered in evidence; and the testimony of the plaintiff, to the effect that the debt was due and owing to him by the deceased, is not corroborated by any other witness."

The Court of Appeal, unanimously, expressed the same opinion viz.:

"Dr. Adrien Hava instituted this suit on June 30, 1923, against Mrs. Victoria Cafiero as universal legatee of J. T. Cafiero, who died September 23, 1921. He alleges an indebtedness of $420, for professional services rendered, at $15 per month, under an oral contract entered into on January 7, 1919.

"The evidence in support of the claim consists of his own testimony, setting out the contract and his compliance therewith by frequent examination of his patient and administration of medicines. *There is no other evidence of the contract, proof of which, therefore, depends wholly upon the testimony of the plaintiff.* * * * "

"The asserted debt or liability in this case is said to arise from a contract. The testimony of witnesses, in addition to the plaintiff, tends to prove services rendered by the plaintiff. *It does not tend to establish the terms of the contract, and it is inadequate to show the extent of the services rendered. The essential elements of the claim, namely, the terms of the contract, and compliance with its terms by the plaintiff, depend upon his own testimony.*" (The italics are mine.)

It is true, the district judge, in overruling Dr. Hava's motion for a new trial, did say that the evidence had satisfied him, the judge, that the deceased Cafiero owed the amount claimed by the doctor for professional services. It may be that the judge was only generously expressing his own opinion of the value of the services which the doctor said he had rendered. There was no reason for wounding the doctor's feelings by doubting his veracity, when the statute declared that regardless of the truth of the doctor's uncorroborat-

ed testimony, it was "incompetent" to prove the alleged verbal contract. And so, I believe, with profound respect for both the doctor and the judge, the latter laid the flattering unction to the doctor's soul, and laid the blame for his ruling on the statute.

Here are the important circumstances of the case which I deem favorable to the widow: The first circumstance is that Dr. Hava's recollection of the date of the alleged agreement was not accurate. In his petition, he alleged that the agreement was made on the occasion of Cafiero's first visit, January 7, 1919; but, in his testimony, he said that that was a mistake—that the agreement was made on the occasion of Cafiero's second visit, January 17, 1919. The second important circumstance is that the alleged contract is an extraordinary one in this country. In China, I understand, the doctors treat their patients on a contingent contract to keep every member of the family well, and when a member of the family gets sick, the doctor's pay stops until the patient gets well. But not so in this country. Here, only the large sugar planters, and manufacturers, whose employees are under the ægis of the Employers' Liability Act, hire their doctors by the month or year. The third important circumstance is that it is unusual for a doctor to allow a patient's bill to run for several years without pay, especially with a patient who is able and willing to pay, and more especially would this be true if the pay were only a small monthly stipend. The fourth important circumstance is that the patient in this case was always ready and willing to pay. The fifth important circumstance is that Cafiero's reputation for paying his debts promptly was, as plaintiff's witness said, "the best in the world," and when he died he did not owe a debt to any one else in the world.

I have referred to those circumstances in the case for the sake of frankness, and to show that there is no equitable consideration to persuade us to depart from the letter of the law in this case. Even before the enactment of the statute of 1906, Dr. Hava's claim would have been a very weak one. As the judges of the Court of Appeal suggested in their written opinion, if this suit had been brought or if demand had been made before Cafiero died, and if he had denied that he had made the contract, no court in Christendom would have given judgment against him, without more proof than there is in this case.

My dissenting from the majority opinion in this case is not for lack of faith in the plaintiff's veracity. I do not know him personally or otherwise. His reputation for truth or professional ethics was not questioned in the trial of the case. I assume that he is an honorable, ethical doctor. But the statute which governs this case makes no distinction in that respect.

The title of the Act 207 of 1906 is:

"An act to limit the admissibility of parol evidence to prove any debt or liability of a party deceased."

Surely, therefore, the act was not intended to extend the rule of admissibility or competency of parol evidence against a dead man.

It is certain that a claim like this, founded upon an alleged verbal statement of a dead man, and not proven by any other evidence than the testimony of the claimant himself, would not have been allowed under the law as established by the jurisprudence before the enactment of the statute of 1906. In the limited time that I have had for preparing this dissenting opinion, I have collected and checked up 21 decisions maintaining that evidence of a verbal statement made by a person who has died, acknowledging an indebtedness, is the weakest evidence that is admissible under the law. In some of these decisions, it is said that, when such

a claim is proven only by the testimony of the claimant himself, it should never be allowed. And in some of the decisions which I have listed, it is said that the reputation of the claimant for truth and veracity is a matter of no importance, for the rule is inflexible. Here is the list of decisions, viz.: Pargoud v. Amberson's Administrator, 10 La. 355; Succession of Fox, 2 Rob. 299; Succession of Segond, 7 Rob. 112; Moran v. LeBlanc, 6 La. Ann. 113; Gates v. Walker, 8 La. Ann. 278; Wilder v. Franklin's Executor, 10 La. Ann. 279; Succession of Croizet, 12 La. Ann. 401; Bringier v. Gordon, 14 La. Ann. 274; Bodenheimer v. Bodenheimer's Ex'rs, 35 La. Ann. 1007; Cutler v. Succession of Collins, 37 La. Ann. 97; Succession of Piffet, 37 La. Ann. 871; Succession of Townsend, 40 La. Ann. 66, 3 So. 488; Heirs of McGehee v. McGehee, 41 La. Ann. 663, 6 So. 253; Foote v. Goodwin, 42 La. Ann. 521, 7 So. 844; Calhoun v. McKnight, 44 La. Ann. 578, 10 So. 783; Succession of Sinnot v. Hibernia Bank, 105 La. 711, 30 So. 233; Succession of Oubre, 109 La. 518, 33 So. 583; Hannay v. N. O. Cotton Exch., 112 La. 1007, 36 So. 831; Kuhn v. Bercher, 114 La. 608, 38 So. 468; Richards v. McLain, 118 La. 428, 43 So. 40; Succession of Gabisso, 122 La. 829, 48 So. 277.

In the Succession of Segond, 7 Rob. 112, it was said:

"We have often said, that the weakest evidence ever received in a court of justice, is the relation by a witness, of a conversation had with an individual dead at the time of the deposition. It might be doubted, though we are not aware that the doubt was ever raised, whether such a relation can be legally received."

In the Succession of Croizet, 12 La. Ann. 401, it was said:

"Proof of verbal acknowledgments of indebtedness is not entitled to much weight, particularly after the death of the person who is alleged to have made them."

In Bringier v. Gordon, 14 La. Ann. 274, it was said:

"The evidence of a single witness to establish acknowledgments of indebtedness on the part of a deceased person, is held to be the weakest species of evidence known to the law, and will be received with disfavor."

In Bodenheimer v. Bodenheimer's Ex'rs, 35 La. Ann. 1007, it was said:

"Extrajudicial admissions of a dead man are the weakest of all evidence. They can not be contradicted. No fear of detection in false swearing impends over the witness. In most instances such testimony is scarcely worthy of consideration."

In Succession of Townsend, 40 La. Ann. 66, 3 So. 488, it was said, and in Succession of Gabisso, 122 La. 827, 48 So. 277, it was repeated:

"Extrajudicial statements of deceased persons have always been ranked as the weakest evidence, and when reported to have been made to single witnesses, in the presence of no one else, generally disregarded."

As I have said, the title of the Act 207 of 1906 is, "An act to limit the admissibility of parol evidence to prove any debt or liability of a party deceased." But, in its text, the act limits the competency of parol evidence in such cases, viz.:

"That, from and after the promulgation of this act, parol evidence shall be incompetent to prove any debt or liability upon the part of a party deceased, except it consist of the testimony of at least one credible witness of good moral character besides the plaintiff; or except it be to corroborate a written acknowledgment or promise to pay signed by the debtor; or unless an action upon the asserted indebtedness shall have been brought within a delay of twelve months after the decease of the debtor."

If the Legislature had intended to say, it would have been quite easy to say, and the Legislature would have said:

"Unless an action upon an asserted indebtedness against a party deceased shall have been brought within a delay of 12 months after his death, parol evidence shall be incompetent to prove the debt or liability, unless the evidence consists of the testimony of at least one credible witness of good moral character besides the plaintiff, or unless it be to corroborate a written

acknowledgment or promise to pay, signed by the debtor."

That is how the majority opinion in this case has inverted and construed the language of the statute; and, to so invert the language of the statute, the court has overruled two decisions and ignored one, and they are all of the decisions—in which this court had already construed the law. In this new interpretation of the law, the word "or" in the last clause of the statute, "or unless an action upon the asserted indebtedness shall have been brought within a delay of twelve months," is omitted, and the omission of the word "or" changes the sense or meaning of the act, so as to make it easier than it was to prove a claim against a dead man, which is quite contrary to the avowed purpose or object of the act, as expressed in its title.

In Spillman v. Spillman, 147 La. 47, 84 So. 489, on rehearing, the statute was held to mean:

"That plaintiff's testimony must be corroborated, though the action was brought within 12 months after the debtor's decease."

In the first decision of the Spillman Case, we construed the statute as it is construed in the majority opinion in the present case; but, on rehearing, and with the utmost care and deliberation, we construed the statute otherwise. The decision was rendered in 1920, the first or erroneous construction being handed down in January, and the final and correct construction being handed down in May of that year. That was the first case in which the question of the meaning of the statute was presented for decision, and the final ruling in the case has been twice affirmed, and never heretofore overruled.

In Succession of Manion, 148 La. 98, 86 So. 667, the author of the original opinion in the Spillman Case again construed the statute wrong, overlooking or ignoring the decision which had been rendered on rehearing in the Spillman Case.

Chief Justice Monroe dissented, and a rehearing was granted, in the Manion Case; and, on rehearing, we affirmed the ruling in the Spillman Case, thus:

"In the case of Spillman v. Spillman, 147 La. 47, 84 So. 489, on rehearing, construing the statute of 1906, we held that, even though the action on the asserted indebtedness was brought within the delay of 12 months, parol evidence was incompetent to support the claim, unless such evidence consisted of the testimony of a credible witness of good moral character, besides the plaintiff, or was offered to corroborate a written acknowledgment or promise to pay signed by the deceased. On the same principle, we must hold that, if the claim has not been asserted, or the action brought, within the delay of 12 months, parol evidence is incompetent, even though it be the testimony of a credible witness of good moral character besides the plaintiff, or be offered to corroborate a written acknowledgment or promise to pay signed by the deceased. * * *

"The word 'or' is used because the expression is an affirmative, not a negative, expression. What the statute says is that parol evidence shall be excluded in either one or the other event; i. e., either if the parol evidence be not of one of the two classes mentioned, or if the action be not brought within the year. We are informed by the precise language of the title of the act that its object or purpose is 'to limit the admissibility of parol evidence to prove any debt or liability of a party deceased.' We would absolutely prevent the accomplishment of that object or purpose, if we should construe the law as meaning that the admissibility and competency of parol evidence shall be 'unlimited' to prove a debt or liability of a person deceased, provided 'an action on the asserted indebtedness shall have been brought within a delay of twelve months after the decease of the debtor.' Such a construction would actually facilitate the proving of a debt against a deceased person, by parol evidence."

In Moon v. Dye, 150 La. 254, 90 So. 639, the same question was presented in another form. The suit was brought after a year from the death of the alleged debtor, and the court said, unanimously, that parol evidence was incompetent to prove the debt, viz.:

"J. T. Dye died during the latter part of the year 1906. This suit was filed March 27, 1918, or nearly 12 years after his death. Plaintiff produced no written evidence of the indebtedness alleged to be due by Dye to the succession of his mother, but relied entirely upon oral testimony. Objection was made that Act 207 of 1906 was a bar to the introduction of parol proof to establish the claim sued on. Act 207 of 1906 provides that: [Here the statute is copied in full.]

"In construing this act the court said in the case of the Succession of Manion, 148 La. 98, 86 South. 667:

" 'We must hold that, if the claim has not been asserted, or the action brought, within the delay of twelve months, parol evidence is incompetent, even though it be the testimony of a credible witness of good moral character besides the plaintiff, or be offered to corroborate a written acknowledgment or promise to pay signed by the deceased. * * *

" 'In this case, no action was brought on the asserted indebtedness within the year. Therefore parol evidence was incompetent, even though it was the testimony of a credible witness of good moral character, other than the plaintiff or claimant, and even though its purpose was to corroborate what purported to be a written acknowledgment * * * by the deceased.'

"As nearly 12 years has elapsed between the decease of J. T. Dye and the commencement of this action, parol evidence was inadmissible and incompetent to prove the debt or liability upon his part."

The case of Moon v. Dye was only decided in 1922. A rehearing was applied for and denied. The case was therefore carefully and thoroughly considered. The printer's ink is not long dried. The decision was unanimous. Even Chief Justice Provosty, who had written the original opinion which we discarded on rehearing in the Spillman Case and in the Manion Case, and had dissented when the ruling was corrected on rehearing, subscribed unqualifiedly to the opinion and decree in Moon v. Dye, thus submitting to a final settlement of the question, and leaving it to the Legislature to change the law if we had interpreted it wrong. The Legislature convened on the 10th of May, 1920, exactly one week after the Spillman Case was decided

on rehearing, and four months after the case had been decided originally. The case was a very important one, in which several very prominent lawyers appeared. The Legislature has met and adjourned four times since that case was finally decided; that is, in 1920, 1921, 1922 and 1924; and a constitutional convention has been held in the meantime. The Louisiana Bar Association has a legislative committee, composed of able and watchful lawyers, to see to it that the Legislature shall correct our mistake if we make one in our interpretations of the statutes.

It is true the six justices who subscribe now to our overruling of the three decisions in which we so deliberately decided upon the meaning of the Act of 1906 have come upon the bench since the adoption of the Constitution of 1921. Two of them, however, Mr. Justice Overton and Mr. Justice Land, subscribed unqualifiedly to the opinion and decree in Moon v. Dye. So did Chief Justice Monroe, Mr. Justice Dawkins, Mr. Justice Baker, Mr. Justice Provosty, as I have said, and the present Chief Justice. In fact, there was not a dissenting voice from any one of the seven members of the court. I respectfully submit that no statute of this state, or perhaps of any state, has ever had its ambiguity so ably agitated, or its meaning so carefully considered and, as I thought, finally adjudged, as the Act 207 of 1906.

If the statute had been ignored or overlooked in our decisions in Spillman v. Spillman, Succession of Manion and Moon v. Dye, I would approve of our correcting instead of perpetuating such an error. But there is no error to be corrected when the meaning of an ambiguous statute has been found and announced in a series of deliberate, painstaking—and painsgiving—decisions of a court of final jurisdiction.

The author of the majority opinion in the present case, from which I dissent, would perhaps agree with me that the doctrine of stare decisis ought to prevail in this case,

above all cases, if the learned justice deemed the statute ambiguous, or if he thought the statute could have the meaning which we have heretofore so carefully and repeatedly decided it has.

Strange to say, the learned author of this new interpretation of the statute, which this court so deliberately rejected, in Spillman v. Spillman, in the Succession of Manion, and in Moon v. Dye, finds now, not only that the meaning given there is not the more reasonable meaning of the statute, but that it is not even ambiguous, that "the legislative intent is clear," that "there is, therefore, no reason for construction," and that "we are not permitted to disregard the letter of the act under pretext of pursuing its spirit." Here is what the learned justice says, in overturning our interpretation of the statute, viz.:

"The language of the Act 207 of 1906 is unambiguous, and the legislative intent is clear. There is, therefore, no reason for construction, and we are not permitted to disregard the letter of the act, under pretext of pursuing its spirit." Citing article 13 of the Civil Code, etc.
"The statute provides clearly and expressly," etc.

All of which is said with due regard, of course, for the care and sincerity with which nine justices on this bench, while humbly conceding that the statute was ambiguous, thought it had the other meaning. And it is all said with due respect, I am sure, to the sincerity and intelligence of the many prominent lawyers who argued successfully the case of Spillman v. Spillman, the Succession of Manion and Moon v. Dye. And it is all said with due respect, I have no doubt, to the qui vive and devotion to duty of the members of the Louisiana bar association's legislative committee, the members of the last four sessions of the Legislature, and the members of the recent Constitutional Convention. They thought that the statute meant what this court had thrice said it meant, or at least that it was ambiguous and that the legislative intent was not so clear that there was "no reason for construction," or that we were "not permitted to disregard the (plain) letter of the act."

I respectfully submit that it should not be said now that the Act of 1906 was not even ambiguous when we rendered the three decisions which will be overruled if the decision in the present case becomes final. It would be better, more consistent with reason and more conducive of respect for our past rulings, to say now that we have abolished the doctrine of stare decisis.

This unexpected changing of the law is not going to foster the confidence of the lawyers in our jurisprudence. It is going to be humiliating to the lawyers who lost the case of Spillman v. Spillman, the Succession of Manion and Moon v. Dye, for they will believe that they were unfortunate only in having their cases decided before the personnel of this court changed, as it has changed, since the adoption of the new Constitution.

An oscillating jurisprudence is what makes litigation. If the majority opinion in this case becomes final, a lawyer on the losing side of a case like this, no matter which way the statute of 1906 may be construed by the lower court, will be neglectful of his duty if he does not appeal the case. And how can the lawyers advise their clients of the meaning of the Act of 1906, if we so hastily reverse what the lawyers have believed was our deliberate and final judgment, as expressed in the three cases in which the question has already come up?

It will not do to say that the act of 1906 is not substantive law. The doctrine of stare decisis applies as well to adjective as to substantive law. In the matter of substantive law, a decision of the court of last resort construing a statute becomes so much a part of the statute itself that a later decision

157 LA.—33

will not be allowed to impair the obligation of a contract made in faith of the former decision. The rule is perhaps less rigorous with regard to adjective law, but the rule of stare decisis applies just the same. On that subject, read 6 Encyclopedia of United States Supreme Court Reports, 774, viz.:

"But the rule is well settled that judicial decisions construing the constitution or laws of the state are a part thereof, and a change of decision may have all the practical effect of the adoption of a new constitutional provision, statute, or ordinance;" etc.

I have said that the act of 1906 has been construed in only three decisions, in all of which the final ruling was the same. That is true. The statute was cited, also, in the Succession of McCloskey, 144 La. 438, 80 So. 650, but the citation was merely to show that the policy of the law was opposed to parol evidence to prove a claim against the succession of a deceased person.

In the opinion in the present case, from which I dissent, it is said, with regard to the rulings in Spillman v. Spillman and Succession of Manion:

"In thus interpreting the statute, this court, in both cases, went beyond the necessities thereof."

That is a mistake. It is the same as to say that the rulings in both cases were obiter dicta. In each case, the decision turned only upon the construction of the statute; that is, whether parol evidence was competent to prove a verbal acknowledgment of a claim against the succession of a deceased person under the language of the statute. It was upon the question of construction of the statute that a rehearing was granted in each case, and the construction first adopted was reversed on rehearing in each case. It would be very strange indeed if we should find now that all of our trouble in construing the statute, in each case, "went beyond the necessities thereof." What we said in those

cases, and in the subsequent case of Moon v. Dye (which is overlooked or ignored in the opinion from which I dissent), was that parol evidence was not competent to prove a claim against a deceased person, unless the suit was brought within a year after his death, and that parol evidence was not competent if the suit was brought within the year, except it consisted of the testimony of at least one credible witness of good moral character besides the plaintiff, or except it tended to corroborate a written acknowledgment or promise to pay signed by the person deceased. Now the court proposes to give the statute the very opposite meaning; that is, that the two exceptions to the incompetency of parol evidence apply only to suits brought after the year has expired, and that the statute has no application at all to suits brought within the year. That will be a clear-cut reversal of our rulings in the three carefully considered cases, if the majority opinion in the present case becomes final.

The wisdom or policy of the rule of law which we established by our previous decisions is also criticized in the majority opinion in the present case. It is suggested that a valid claim, susceptible of proof by parol evidence, might become bad, or not provable, overnight. That argument might be urged against the wisdom or good policy of any statute prescribing the time within which a man must speak, or forever hold his peace. The answer to the argument is that we have nothing to do with the wisdom or policy of the acts of the Legislature. That tribunal, I presume, has acquiesced in our interpretation of this statute.

On the evidence in this case, however, we should not reverse the judgment of the district court and of the Court of Appeal no matter how little regard we may have for our previous decisions interpreting the statute of 1906. As a rule, we do not reverse the judgments of the Courts of Appeal on questions

of sufficiency of the evidence in a case which comes here on an application for a writ of certiorari or review. Even if this case were here on appeal there would be no occasion either to overrule or to affirm our decisions interpreting the statute of 1906. Under either construction of the statute, or regardless of the statute, the plaintiff's claim against this dead man, founded upon an alleged verbal agreement, is not sustained by competent evidence. I dare say no such claim against a succession of a deceased person was ever allowed without more proof than we have in this case.

The real point in the case is this: If Dr. Hava had sued this widow for the actual value of the services which he had rendered to her husband, for the 48 visits to the doctor's office, and for the five additional prescriptions, etc., and if the doctor had proven the value of the services, he should have had judgment for the amount. The amount would have been much less than he claims under the alleged verbal agreement, and a part of the claim would have been subject to the plea of prescription, but the widow could hardly have proven payment, which, of course, she does not plead.

But the fact that Cafiero did visit Doctor Hava's office, and that the doctor did render him professional services, is not a corroboration of the doctor's statement that Cafiero was under a verbal contract to pay him anything more or less than the value of his services. All of us visit doctor's offices and employ their services. Surely, Doctor Hava would not have brought this suit at all if Cafiero had never visited his office or had his services. The suit was brought wrong. It should have been founded upon the quantum meruit. The judgment of the Court of Appeal, affirming the judgment of the district court, dismissing the suit, ought to be affirmed, reserving the plaintiff's right to sue for the value of his services.