## CAPPELL v. GRANT et al.

### No. 5604.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1938.

John R. Hunter, Sr., of Alexandria, for appellants.

J. B. Nachman and Isaac Wahlder, both of Alexandria, for appellee.

DREW, Judge.

January 5, 1932, plaintiff instituted this suit, alleging that R. H. Grant was indebted unto him in the sum of $446.30. He alleged he was engaged in the practice of medicine in the city of Alexandria, La., and owns and operates a medical and surgical clinic in that city; that in the latter part of the year. 1931, Mrs. Leila Stucky, daughter of the defendant, was placed in his clinic and under his care as a practicing physician; that the services rendered and expense incurred while Mrs. Stucky was in his clinic were accrued by virtue of the express agreement and direction of the defendant. He further alleged the total charges due by defendant were $611.30, representing the amounts due for special nurses, clinic, drugs, etc., long-distance telephone calls, professional services, and assistants. He further alleged that defendant paid on said account the sum of $165 on October 20, 1931, leaving a balance due of $446.30. He further alleged defendant had often promised to pay the account, but had failed to do so. He prayed for judgment accordingly.

On January 19, 1932, defendant answered, denying he was indebted unto plaintiff in any amount. He admitted plaintiff was a practicing physician and owned a clinic in the city of Alexandria.

He admitted his daughter was a patient in plaintiff's clinic and under his care as a physician. He denies that he placed her there, or that he agreed to pay for the services. He admitted paying the $165 but alleged it was paid out of moneys belonging to his daughter, of which he had possession, and that the payment was made to take care of the amounts due the special nurses at that time. He denied promising to pay plaintiff, or that he owed plaintiff any amount; and further alleged that his daughter, Mrs. Stucky, was of legal age and responsible for her own contracts and agreements. He prayed that the demands of plaintiff be rejected at his cost. He swore to the correctness of the answer.

The record fails to disclose that any further action was taken in the case until November 14, 1936, when plaintiff filed a supplemental and amended petition setting out that R. H. Grant, the defendant, had departed this life on September 14, 1936, and making the succession of R. H. Grant, through its coexecutors, parties defendant. The case was tried below June 1, 1937, and there was judgment for plaintiff in the sum of $374.80, with interest and costs. Defendants are now prosecuting this, a devolutive appeal.

We are not concerned here with the rule of law, relative to R. H. Grant's promising to pay the debt of a third person. Plaintiff is not suing on those grounds. He alleged R. H. Grant was the primary obligor by virtue of a verbal contract and agreement in which Grant directed that plaintiff render the necessary services to Mrs. Stucky. We might add here that Mrs. Stucky died in another clinic or sanitarium in the city of New Orleans, prior to the filing of this suit. It is contended by defendant that proof of plaintiff's claim must comply with Act No. 11 of 1926, since the party originally sued died before trial. The jurisprudence of this state, in interpreting Act No. 207 of 1906, which was similar to the 1926 act, which amended and re-enacted it, was at one time in line with defendant's contentions. See Spillman v. Spillman, 147 La. 47, 84 So. 489, and Succession of Manion, 148 La. 98, 86 So. 667; but the later jurisprudence interpreting both acts is adverse to defendant's contentions. Schilkeffskey v. Ring, 8. La.App. 426; Hava v. Cafiero, 157 La. 1007, 103 So. 294, 295; Succession of Williams, 159 La. 814, 106 So. 314, 315.

In the Hava v. Cafiero Case, the court overruled the Spillman and Manion Cases and said:

"The language of Act 207 of 1906 is unambiguous, and the legislative intent is clear. There is, therefore, no reason for construction, and we are not permitted to disregard the letter of the act under pretext of pursuing its spirit. Civ.Code, art. 13. Succession of Campbell, 115 La. [1035] 1040, 40 So. 449; State ex rel. Mize v. McElroy, 44 La.Ann. 796, 11 So. 133, 16 L.R.A. 278, 32. Am.St.Rep. 355; Succession of Teaulet, 28 La.Ann. 42; Succession of Taylor, 23 La.Ann. [22] 24; Arrowsmith v. Durell, 21 La.Ann. 295.

"The statute provides clearly and expressly that parol evidence shall be incompetent to prove any debts against a deceased debtor except in three classes of cases. These exceptions are detailed one after another, and are distinctively expressed, and this, we think, was done advisedly by the Legislature. There is no more reason for holding that the lawmaker intended the conjunction between the second and third exceptions to read as if it were 'and,' than there is for holding that the conjunctions between the first exception and the main portion of the statute and between the first and second exceptions should be read in the same way.

"The act was enacted as a rule of public policy to curb the practice of presenting improper and stale claims against the heirs or legal representatives of deceased persons, and the words used indubitably express the legislative intent.

"In our opinion the clear meaning of the statute is that, if a claim be made against a party deceased more than one year after his death, it must be established by the testimony of one creditable witness of good moral character, besides plaintiff, unless it be corroborated by a written acknowledgment or promise to pay signed by the debtor.

"Claims asserted against deceased parties within one year after their deaths are not affected by the provisions of the act. These claims, in general, are provable in the manner and form required for the proof of obligations.

"To hold otherwise would nullify many of the ordinary business transactions. A claim good against a debtor one day would, by his sudden demise during the intervening night, be rendered worthless the

next day. No charge account in a store, or other business establishment, would be secure, for it rarely happens that more than one clerk or other employe has personal knowledge of a particular sale or other transaction.

"The doctrine of the cases of Spillman v. Spillman and Succession of Manion, referred to, supra, in so far as it conflicts with the views herein set forth, is expressly overruled."

And in the Succession of Williams Case, the court reaffirmed the Hava v. Cafiero Case in the following language:

"It is conceded that the plaintiff's suit was filed against the succession in less than one year after the death of Williams.

"Hence, under the ruling in Hava v. Cafiero, 157 La. 1007, 103 So. 294, the provisions of Act 207 of 1906 have no application to this case. In the case referred to we said:

"'Claims asserted against deceased parties within one year after their deaths are not affected by the provisions of the act.

"'These claims, in general, are provable in the manner and form required for the proof of obligations. To hold otherwise would nullify many of the ordinary business transactions.'

"The doctrine announced in the Spillman Case, 147 La. 47, 84 So. 489, and the case of Succession of Manion, 148 La. 98, 86 So. 667, was expressly overruled in so far as it was in conflict with the ruling in the Hava Case, and we find no sufficient reason to recede from the later pronouncement and to return to the holding in the two earlier cases.

"We have referred to this matter because of the insistence that the court ought to go back to the original interpretations of the act of 1906."

▇ It is therefore, clear that Act No. 11 of 1926 has no application to this case, for the reason the suit was filed and answered during the lifetime of the alleged debtor. Plaintiff's claim is, therefore, provable in the manner and form required for the proof of obligations in general.

For the purpose of this opinion, in referring to the defendant, we will be referring to "Capt. Grant," the original defendant, and not the present defendants, who are coexecutors of his estate.

▇ Mrs. Stucky was the widowed daughter of the defendant. She and her two minor children had, for several years before her death, made their home with the defendant. They kept house for him, and in return were taken care of by him. It is certain that he furnished them room and board, without cost. What other help he gave them is uncertain. Mrs. Stucky's husband died about the year 1926 or 1927, and left her insurance in the amount of $1,000 and a house and lot in the city of Alexandria, which was heavily mortgaged to the Building & Loan Association. Soon thereafter she deeded the house and lot to her father, the defendant. After this, her children were operated on at different times for infected tonsils, adenoids, and appendicitis. She paid for these operations, and in other manners undoubtedly disposed of the insurance money she had received, for at the time of her death, which was the latter part of 1931, or the early part of 1932, she left nothing of value, other than a small life insurance policy on her life, which was paid to her children. The inventory of her estate shows no other property of any kind. The only income she had was her commission from the sale of cosmetics, a business at which she worked for a few weeks before her fatal illness. We are of the opinion she was entirely without means and was forced to rely upon her father for a livelihood for herself and children. The testimony shows that she made this fact known to the plaintiff, and that the plaintiff was not looking to her for payment for his services rendered, beginning October 5, 1931, which was the last time she entered plaintiff's clinic, where she remained until October 28, 1931, at which time she was taken to New Orleans, where she died in the Touro Infirmary. We are of the opinion the testimony conclusively shows that the defendant authorized and directed that the services be rendered for this period of time. The doctor so testified, and Mrs. Taylor, a close friend of Mrs. Stucky, completely corroborated him. There is no testimony denying it. Without a complete rehashing of the testimony which to us is most convincing, we find that Capt. Grant made himself primarily liable for the treatment and expense incurred at the clinic of plaintiff for the period of time beginning October 5, 1931, through October 28, 1931. There is no contradiction of the testimony that Capt. Grant, in per-

son, called the plaintiff to see Mrs. Stucky on August 8, 1931, for which a. charge of $3.50 is made. We are also of the opinion that the record fails to show by a preponderance of testimony that Capt. Grant made himself primarily liable for the visits of Mrs. Stucky to plaintiff's office on August 10 and August 17, 1931, and for the fistula operation on September 30, 1931, for which a total charge was made of $68. There is another item of $7 claimed by plaintiff for personal service to Capt. Grant. The allegations of the petition do not cover this claim, and testimony regarding it was objected to and should have been sustained. This item cannot be allowed, which makes $75 of plaintiff's claim which is not allowed. The entire claim is $446.30.

We therefore find that plaintiff is entitled to recover the sum of $371.30, with interest. It therefore follows that the judgment of the lower court is amended by reducing the amount awarded to plaintiff from $374.80 to $371.30, and, as amended, the judgment is affirmed. Cost of appeal to be paid by appellee.