### No. 1823
### Second Circuit Appeal

---

## C. E. EASTERWOOD v. MRS. MAY E. SCOTT ET AL.

---

(February 3, 1925, Opinion and Decree)
(March 2, 1925, Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Evidence—Par. 52, 56, 59.**

Under Article 2245 of Civil Code, defendants' allegation that they do not know the signature of deceased on a note

throws the burden of proof on plaintiff to prove it.

**2. Louisiana Digest—Evidence—Par. 208.**

In view of Act No. 207 of 1906 and Civil Code, Article 2278, parol proof of signatures of deceased persons in suits filed more than twelve months after death is admissible and may be made by the evidence of plaintiff and at least one credible witness of good moral character besides the plaintiff.

**3. Louisiana Digest—Evidence—Par. 208.**

In view of Article 2245 of the Civil Code and Article 325 of the Code of Practice, where the defendants allege that they do not know the signature of deceased, the proof of signature of deceased is properly made by two credible witnesses, one of whom is the plaintiff.

**4. Louisiana Digest—Marriage—Par. 211, 212.**

The widow and orphan child are not bound in solido but only jointly by a promissory note signed by the deceased husband.

Appeal from the First Judicial Court of Louisiana, Parish of Caddo, Hon. T. F. Bell, Judge.

Plaintiff sues the widow and sole heir (a minor) of Marvin Scott, deceased, on open account, and also a note for $500.00 (besides interest and attorney's fees), alleged to have been signed by said Scott.

This is a suit filed more than twelve months after the death of Marvin Scott. Judgment went for plaintiff in the lower court on the note but against him on the account.

Defendants appealed and plaintiff does not complain of the judgment of the lower court.

Judgment amended and affirmed.

Cook & Cook, of Shreveport, attorneys for plaintiff, appellee.

Joseph H. Levy, of Shreveport, attorney for defendant, appellant.

CARVER, J. Plaintiff sues the widow and sole heir (a minor) of Marvin Scott deceased, on an open account, and also

a note for $500.00 (besides interest and attorney's fees), alleged to have been signed by said Scott.

Judgment went for plaintiff in the lower court on the note but against him on the account.

Defendants appealed, and plaintiff does not complain of the judgment of the lower court.

The suit was filed more than twelve months after the death of Marvin Scott.

Defendants contended in the lower court and also in this court:

1. That the suit, having been filed more than twelve months after the death of Marvin Scott, parol evidence was not admissible to prove his signature on the note; and

2. That if such evidence was admissible, the signature was not proven by the quantum of proof demanded by law.

1.

In support of the first contention, defendants rely on Act 207 of 1906, which reads as follows:

AN ACT to limit the admissibility of parol evidence to prove any debt or liability of a party deceased.

Section 1. Be it enacted by the General Assembly of the State of Louisiana, That from and after the promulgation of this act, parol evidence shall be incompetent to prove any debt or liability upon the part of a party deceased, except it consist of the testimony of at least one credible witness of good moral character besides the plaintiff; or except it be to corroborate a written acknowledgment or promise to pay signed by the debtor; or unless an action upon the asserted indebtedness shall have been brought within a delay of twelve months after the decease of the debtor.

Section 2. Be it further enacted, etc., That all laws or parts of laws in conflict herewith be and the same are hereby repealed.

They also cite:

Succession of Manion, 148 La. 98, 86 South. 667.

Spillman vs. Spillman, 147 La. 47, 84 South. 489.

Moon et al. vs. Dye et al., 150 La. 255, 90 South. 639.

Defendants do not deny the signature on the note but allege that they do not know it, which, under Article 2245, Civil Code, was equivalent to a denial, thereby throwing the burden on plaintiff to prove it. Plaintiff sought to prove the signature by the testimony of plaintiff himself and that of J. P. Scott, a brother of Marvin Scott. Defendants objected, on the ground above mentioned, which objection the lower court overruled and, we think, properly. The parol evidence was not offered to prove the debt; the instrument sued on did that; and the parol was offered merely to prove the signature.

The Civil Code prohibits parol evidence in many classes of cases. Some are given in Article 2278, namely: to prove a promise to pay a judgment in order to take it out of prescription or to revive it after prescription has run; to prove the promise of a party deceased to pay a debt, for either of the purposes above mentioned; to prove a promise to pay the debt of a third person; to prove a promise to pay a debt evidenced by writing after prescription has run; but it has never been considered by the bench or bar that these prohibitions prevented parol proof of signatures to written instruments evidencing any of the things above mentioned.

If defendant's contention that the act in question, in declaring parol evidence shall be incompetent to prove a debt of a party deceased unless suit is brought within twelve months after the death, meant to prohibit such evidence to prove the signature of a party to an instrument evidencing the debt, is correct, then equally Article 2278 of the Civil Code prohibiting parol evidence to prove various things above mentioned would prohibit such evidence to prove signatures to instruments evidencing such things. We think such a construction of this article would strike the profession with amazement. That such proof was admissible has never been questioned that we know of, and certainly could not be successfully questioned after acquiescence by bench and bar during the many years that have elapsed since that article was adopted.

The act in question is, in our opinion, less susceptible of the construction contended for than Article 2278. That article clearly is a prohibition against receiving parol evidence. It says "parol evidence shall not be received." The act, though, is not so clearly a prohibition against receiving the evidence. What it says is that parol evidence shall be incompetent to prove "any debt or liability upon the part of a party deceased, except it consist of the testimony of at least one credible witness of good moral character besides the plaintiff; or except it be to corroborate a written acknowledgment or promise to pay signed by the debtor; or unless," etc.

This, if a prohibition against receiving parol evidence in suits filed more than twelve months after the death, is not, in case of suits filed within that time, a prohibition against receiving parol evidence of the kind mentioned in the two exceptions, but rather contemplates that it shall be received and merely prescribes the measure it must fill.

We find nothing in any of the cited cases supporting the defendant's contention on this question.

In the Moon case, there was no written evidence, but plaintiff sought by purely oral testimony to prove the alleged indebtedness.

In the Spillman case, also, the oral testimony was not offered to prove a signature but to prove a debt not shown by any in-

strument purporting to be signed by the deceased.

In the Manion case the signature was not disputed, but the signed instrument did not itself prove the alleged claim, being unintelligible on its face, and the parol proof was offered not merely to explain the written instrument but rather in order to prove the claim by its own weight.

The court did hold, though, that if suit was not brought within twelve months, parol, evidence was incompetent, even if it were of the kind mentioned in the two exceptions.

It is clear that in none of these cases did the court hold that the prohibition of the act in question prevented parol proof of signature to written instruments. If any expressions in the decisions seem to imply that the act would do so, we are satisfied the court did not intend the expressions in that sense and would repel the idea of being held to such sense.

### 2.

The plaintiff testified that he saw Marvin Scott sign the note in question.

J. P. Scott, a brother of Marvin Scott, testified as follows:

"Q. Are you familiar with Mr. Marvin Scott's handwriting?
"A. Yes, I think I should be.
"Q. You were associated in business with him, were you not?
"A. He was an employee of a corporation that I owned.

\*     \*     \*     \*

"Q. Will you look at that signature and answer the question, please, sir, if you recognize that as the signature of Mr. Marvin Scott? (Referring to the signature on the note.)
"A. I would be bound to say that that is his signature. If it isn't, it is such a good imitation that I could not tell the difference."

He further testified that he was now president of Southern Drug Company, of which Marvin Scott had been president at

the time of his death, and that he and Marvin Scott each owned 450 shares of its stock.

The widow of the deceased, who had been married to him three years, testified that she did not know his handwriting.

Defendants contend that the testimony of plaintiff and J. P. Scott was not sufficient under Article 2245, Civil Code, and Article 325, Code of Practice, which read as follows:

Civil Code, Article 2245:

"If the party disavow the signature, or the heirs of other representatives declare that they do not know it, it must be proved by witnesses or comparison, as in other cases."

Code of Practice, Article 325:

"Denial and proof of signature. If the defendant deny his signature in his answer, or contend that the same has been counterfeited, the plaintiff must prove the genuineness of such signature, either by witnesses who have seen the defendant sign the act, or who declare that they know it to be his signature, because they have frequently seen him write and sign his name.
"But the proof by witnesses shall not exclude the proof by experts or by comparison of the writings as established by the Civil Code."

Defendant's counsel cites Watts vs. Collier, 140 La. 99, 72 South. 822. In that case the signature in question was one purporting to have been made to a homestead waiver by a negro woman by making her mark. One witness, the clerk of the plaintiff, testified that he saw her make her mark. There was some question as to whether the instrument was prepared at one or the other of two visits. The negro woman and her husband both testified that she did not sign by making her mark on either visit though both were present on both occasions. Their daughter, present on one of the occasions, swore she did not sign it on that occasion. The woman in

her pleadings had denied her signature, thereby throwing the burden of proving it on plaintiff.

It thus appears that there was one witness against two, or perhaps one witness against three. The court held in the original opinion that this did not fulfill the measure of proof required by Code of Practice 325, which requires witnesses, which means, of course, more than one witness.

In the opinion on rehearing, Justice Monroe considered that Code of Practice, Article 325, did not apply to a case where the signature was by mark, but held, as we understand it, that the testimony of the one witness in that particular case, being both contradicted and uncorroborated, was insufficient to discharge the burden resting upon plaintiff, irrespective of Code of Practice, Article 325.

Defendant's counsel contend that John P. Scott's testimony should be eliminated for the reason, as he says, that it destroys itself; and that he does not testify that he saw him sign the note or that he is familiar with the handwriting of his brother by having often seen him write and sign his name, or does he qualify as an expert.

We do think this contention sound. In stating that if the signature in question was not his brother's signature it was such a good imitation that the witness could not tell the difference, we think the witness was emphasizing the previous part of his answer to the effect that he was bound to say the signature was his brother's. We do not think it implies any doubt of its being so beyond the doubt which would exist in any case where a signature apparently genuine was examined and where, of course, the bare possibility existed of its being a perfect forgery.

In view of the relations between the witness and Marvin Scott (they being brothers and Marvin an employee of plaintiff's corporation, which position of necessity required him to do a great deal of writing and signing his name, and Marvin being, besides, a man of considerable affairs to the knowledge of the witness), we are satisfied that the witness must have seen him write and sign his name frequently and would have so testified in express terms had he been asked the direct question.

His answer did amount to saying that he knew the signature, and the only deficiency in the proof, if any, is his failure to state that he knew it from having seen him often write and sign his name.

The testimony of the witness was not objected to on the ground that he had not been qualified to testify to the signature either from having seen it made or from having often seen him write and sign; but it was objected to solely on the ground that parol proof was not admissible. If the first objection had been made, we have no doubt that the witness could have qualified by stating that he had often seen his brother write and sign his name. If, without having made that particular objection, the defendant would be in position to object to his testimony on that score in this court, the sustaining of the objection would not warrant final judgment against plaintiff but at most either a remanding for a new trial or dismissal of his action as of non-suit. We think, though, that under all the circumstances of the case we should hold the testimony of Scott admissible notwithstanding his omission to state (because, as we think not questioned), that he was familiar with the signature from having often seen him write and sign his name.

Holding, as we do, that the testimony of both Scott and the plaintiff is properly to be considered, this makes the testimony

that of two witnesses which, we think, fulfills the measure required by Code of Practice 325. '

It was expressly held in the case of Pinckard et al. vs. Hampton, 22 La. Ann. 439, that it was a sufficient compliance with this article where one witness testified that he had seen the defendant sign the instrument and another witness testified that he was familiar with the defendant's signature and knew the disputed signature to be genuine.

This case is clearly in point here and with the sole exception that in that case the facts are similar to the facts here the witness testifying to the signature by reason of being familiar with it, qualified to give such testimony by stating he had often seen defendant write his name; while J. P. Scott in this case does not do so.

As said above, though, we think the qualification of the witness, considering all the circumstances, sufficient.

The unfortunate situation of the defendants, suddenly bereft of a husband and father and as suddenly reduced from supposed affluence to comparative poverty, which situation is so forcibly depicted by defendants' able counsel, appeals strongly to our sypmathies as men, but we cannot permit it to becloud our judgment as judges.

The judgment of the lower court is, we think, correct in holding defendants liable on the note but erroneous in holding them liable in solido. Their obligation is only joint.

It is decreed that the judgment of the lower court be amended by decreeing Mrs. May Elliston Scott, widow of Marvin Scott, individually, and Mary Rose Scott, liable on the note sued on, not in solido but only jointly; the minor's liability, of the estate of Marvin Scott as shown by course, to be limited to her interest in the inventory in the tutorship; and, as thus amended, that it be affirmed. Costs of the lower court to be paid by defendants; those of the appeal to be paid by plaintiff.